**William Hall Paxton McCLENAHAN, Plaintiff–Appellant,**

v.

**Glenn A. COOLEY, Defendant–Appellee.**

Supreme Court of Tennessee,
at Knoxville.

March 11, 1991.

Jimmy W. Bilbo, Logan, Shockey, Miller & Bilbo, Cleveland, for plaintiff-appellant.

Kenneth R. Starr, W.B. Luther, Jane A. Cobb, Chattanooga, for defendant-appellee.

## OPINION

DROWOTA, Justice.

In this action for the wrongful death of his wife and two children and personal injuries to another child, William McClenahan, Plaintiff-Appellant, appeals the dis-

missal of his lawsuit against Glenn Cooley, Defendant–Appellee, by the Circuit Court of Bradley County. The central issue presented in this litigation is whether a jury should be permitted to determine the issue of proximate causation in cases where the keys are left in the ignition of a parked automobile that is subsequently stolen and thereafter involved in an accident. For the reasons that follow, we reverse and remand.

 In light of the fact that this case was dismissed on a motion for judgment on the pleadings pursuant to Rule 12.03 of the Tennessee Rules of Civil Procedure, we are bound to treat as false all allegations of the Defendant, the moving party, which are denied, and as true all well-pleaded allegations contained in the pleadings of the Plaintiff, the opponent of the motion. See *Trigg v. Middle Tenn. Elec. Membership Corp.*, 533 S.W.2d 730, 732–33 (Tenn.App. 1975). In other words, on an appeal from an order allowing a judgment on the pleadings, as in this case, all well-pleaded facts and all reasonable inferences drawn therefrom must be accepted as true. *Trigg* at 733 (citing *Darwin v. Town of Cookeville,* 170 Tenn. 508, 97 S.W.2d 838 (1936); *Rodgers v. Rodgers,* 53 Tenn. 489 (1871)). Conclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment. *Trigg* at 733. Thus, all of the facts alleged by the Plaintiff in this case must be taken as true and the issue then before us is whether upon those facts the Plaintiff's complaint states a cause of action that a jury should have been entitled to decide.

The facts to be taken as true in this case reveal that on May 20, 1988, at approximately 11 a.m., the Defendant, Glenn Cooley, drove his 1981 Pontiac Bonneville automobile to a bank located in the public parking lot of a shopping center in Athens. The Defendant left the keys in the ignition to his parked automobile while he went

inside of the bank to transact business. While the Defendant was in the bank, a thief spotted the keys in the ignition of the vehicle, started the engine, and began driving down the interstate where he was spotted by a state trooper. When the thief exited the interstate a short time later, a high speed chase ensued on the busiest stretch of highway in Cleveland at the lunchtime hour. The thief was pursued by police officers approximately 80 miles per hour approaching the most dangerous intersection in the city. When the vehicles reached the intersection, the thief ran a red light traveling in excess of 80 miles per hour and slammed into another vehicle broadside. That vehicle was being driven by the Plaintiff's thirty-one year old wife who was six to eight months pregnant. She died approximately fourteen hours later in a nearby hospital. The viable fetus was delivered before Mrs. McClenahan's untimely death but likewise perished as a result of injuries arising out of the accident. The Plaintiff's four year old son, a passenger in the vehicle, also died. Another young child who was also riding in the vehicle sustained substantial injuries but survived. The Defendant's vehicle was reported stolen at 11:13 a.m. and the collision between the stolen car and the one owned by the Plaintiff occurred at 11:33 a.m. It should be noted that the Defendant was employed as a law enforcement officer and had formerly been a high ranking officer with various law enforcement agencies in McMinn County.[1]

The Plaintiff brought an action predicated upon negligence per se and common law negligence for the wrongful death of his wife and the two children, and for injuries to the child who survived. The complaint alleges that the Defendant knew or should have known that it was unlawful to leave the keys in the ignition of an unattended vehicle; that he knew or should have known that it was unsafe to do so; and that he knew or should have known that

---

1. The thief, Allen Lawhorne, was convicted of two counts of second degree murder and was sentenced to serve consecutive life sentences. He had been sniffing glue for a period of two days prior to the theft and was on parole at the time of the accident. See *Lawhorne v. State,* 1990 WL 70908 (Tenn.Crim.App. at Knoxville, May 31, 1990). This Court denied Lawhorne's application for permission to appeal on October 1, 1990.

the place where he had parked the vehicle, complete with keys in the ignition, created a foreseeable likelihood that the vehicle would be stolen. The claim is made by the Plaintiff that the actions of the thief are a foreseeable and/or expected result of the Defendant's purported negligence.

The trial judge granted the Defendant's motion for judgment on the pleadings, holding that since the vehicle owned by the Defendant was left unattended on private property at the time it was stolen, T.C.A. § 55–8–162 did not apply.[2] The Court of Appeals affirmed and opined that the intervening negligence of the thief insulated the Defendant from liability and that T.C.A. § 55–8–162 has no application to vehicles left unattended in privately owned parking lots. This Court thereafter granted the Plaintiff's Rule 11 application for permission to appeal to decide the issue of whether a jury should be allowed to determine the issues of proximate cause and intervening cause in cases such as this where the keys are left in the ignition of an unattended automobile that is stolen and ultimately involved in an accident a short time later.

### I.

A review of the pertinent Tennessee key-in-ignition cases is useful. Chronologically, *Teague v. Pritchard*, 38 Tenn.App. 686, 279 S.W.2d 706 (1954), presented the first opportunity for a court in Tennessee to address the situation involving keys left in the ignition of an unattended vehicle which is subsequently stolen. In *Teague*, the Defendant's employee parked a vehicle on a street located in a densely populated residential area in Memphis. The key to the vehicle was left in the ignition and the driver let the car stand unattended at night. A thief stole the vehicle and caused personal injury and property damage. The trial court directed a verdict in favor of the owner of the car (and the employee who left it) and the Court of Appeals affirmed. It was held that the proximate cause of the injuries was the intervening negligence of

the thief as opposed to the owner's negligence in leaving the keys in the ignition. Curiously, *Teague* fails to make reference to *Morris v. Bolling*, 31 Tenn.App. 577, 218 S.W.2d 754 (1948) where a taxicab driver left the keys in the ignition of his cab and an intoxicated passenger in the front seat drove the vehicle away while the driver left the cab to deliver some packages. A collision resulted moments after the theft. The appellate court in *Morris* held that the question of proximate cause was a matter solely for the jury because reasonable minds could differ on the foreseeability of the drunk passenger driving away once the driver left the vehicle unattended with the key in the ignition. Significantly, *Teague* and *Morris* were decided prior to the enactment of T.C.A. § 55–8–162, relying on general negligence principles.

Following *Teague* and *Morris*, this Court decided *Justus v. Wood*, 209 Tenn. 55, 348 S.W.2d 332 (1961). In *Justus*, the Defendant car owner left his vehicle unattended with the keys in the ignition on the side of a busy highway where it was subsequently stolen. The thief caused an accident while trying to flee police in excess of 100 miles per hour. The Court held that whether the owner (who violated T.C.A. § 55–8–162) could reasonably foresee or anticipate the taking of the unattended car was a jury question. The following excerpt from the opinion explains the Court's rationale:

> "Considering the nature of the acts and the circumstances surrounding the entire matter, it seems quite clear that reasonable minds might differ as to whether this intervening force of the negligent thief was within the range of reasonable anticipation of [the Defendant car owner]. It, therefore, becomes, as this Court views it, a jury question....

> \* \* \* \* \* \*

> The Court is of the opinion that the circumstances surrounding the negligent act of [the owner of the car] ... is such that different minds might draw differ-

**2.** T.C.A. § 55–8–162 provides: "No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, and effectively set-

ting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway."

ent conclusions as to whether the intervening negligent act of the thief following the stealing of the car was a matter that was or should have been within the range of reasonable anticipation of [the defendant car owner]. That is a jury question.

\* \* \* \* \* \*

[R]easonable minds may differ as to whether the negligence of the automobile thief, whereby these complainants were injured, was an act within the reasonable anticipation of the owner of the stolen automobile, at the time he violated the statute and left his automobile parked and unattended with the key in the ignition on a heavily traveled metropolitan street.

\* \* \* \* \* \*

The leaving of the key in the ignition of this automobile while parked upon a heavily traveled street amounted in fact to an open invitation to a thief to enter it and drive away. It made the process of so stealing the automobile without detection as easy as it could possibly have been made.

Is it not, therefore, at least a jury question as to whether the owner of this automobile should have anticipated that a thief, observing the key in the ignition, would step in and drive away without having to commit any act which might arouse the suspicion of others who might be there on the street at the time?

It is common knowledge that a person possessed of the characteristics which would cause him to thus steal an automobile is a person who is irresponsible and totally devoid of regard for the rights and safety of others who might be using the street at the same time that he, the thief, was operating it in heavy traffic. Is it not at least a jury question as to whether such negligent owner of the automobile should have anticipated that a person so stealing his car would operate it in a reckless and dangerous manner in which this thief was operating this car at the time of the accident in question? Is it not at least a jury question as to whether the owner should anticipate

that such a thief would drive the car in the very manner in which this thief was driving this car at the time?

\* \* \* \* \* \*

To hold, as is the contention of the petitioner, that the injuries herein were due solely to the negligent operation, by an unauthorized person, of this automobile appears to beg the question, because to hold this way assumes that the misappropriation of the car was unforeseeable. The statute [T.C.A. § 55–8–162], itself, is based in part on the likelihood that cars left unattended in violation of this statute will be taken, and implies a degree of foreseeability of that result. It follows that violation of the statute could be found to be an act of negligence which created a foreseeable risk of the car being taken and driven off. If that occurred, and a party was injured by the negligence of such driver, the injury could be held to have been proximately caused by the negligent act of leaving the car unattended.

The statute [T.C.A. § 55–8–162] is a safety device because to do the things that it requires all result in preventing interference with the automobile's stationary condition and mechanical immobility. It is protection to life and property which might otherwise be affected by improper movement of the automobile."
*Justus*, 348 S.W.2d at 335, 338; 209 Tenn. 55, 349 S.W.2d 793, 793–94 (1961) (second petition to rehear).

After *Justus* was decided, this Court rendered its opinion in *Young v. Costner–Eagleton Motors, Inc.*, 214 Tenn. 306, 379 S.W.2d 785 (1964). There, the Defendant was in the business of selling cars. A thief took one of the cars on the Defendant's lot after the keys were left in it and a collision followed. The car had been left on a private parking lot on which the public was invited. The Court, relying upon the holding in *Teague*, determined that the owner was not liable as a matter of law because there had been no violation of T.C.A. § 55–8–162 since the car was left on private property. "[T]his Court denied certiorari [in *Teague* ] and in doing so approved

the rule of absolute non-liability in the absence of an ordinance or statute. The Court of Appeals in the *Teague* case followed the majority view in this country. We still adhere to that view...." *Young*, 379 S.W.2d at 786.

In another case, *Martel v. Chattanooga Parking Stations, Inc.*, 224 Tenn. 232, 453 S.W.2d 767 (1970), the vehicle owner left her car with a parking lot attendant. The procedure on this particular lot was for the attendant to park the vehicle and leave the key in the ignition. The owner's car was stolen and during a subsequent chase by police, the thief caused a fatal accident. The Court affirmed the trial court's dismissal, holding that T.C.A. § 55–8–162 did not apply because the vehicle was left on private property, albeit a public parking lot. The Court relied upon *Teague* and *Young*, distinguishing *Justus* on the private versus public property distinction. The same result occurred in *Parker v. Charlie Kittle Pontiac Co.*, 495 S.W.2d 810 (Tenn.1973) where the defendant, a seller of cars, left an unattended vehicle with the key in the ignition in an open and unprotected area of his sales lot, private property, to which the public had access. The Court in *Parker* held that no liability would attach to the owner of the lot in view of *Teague, Young,* and *Martel*.

Finally, in *Rowe v. City of Chattanooga*, 666 S.W.2d 469 (Tenn.App.1983), a police officer parked his patrol car on the private parking lot of a store with the keys in the ignition and the motor running. While the officer was in the store, the patrol car was stolen and an accident resulted. The car was left in a "high crime neighborhood." Summary judgment in favor of the officer was affirmed on appeal because the car had been left on private property.

Viewing the foregoing cases as a group, it is obvious that a distinction is made on the basis of whether the vehicle is left unattended on private as opposed to public property for purposes of determining whether the matter goes to a jury. If the vehicle is left on private property (i.e. public parking lots), T.C.A. § 55–8–162 does not apply and the vehicle owner is entitled to judgment as a matter of law. If the vehicle is left on public property, such as alongside of a road, the case goes to the jury because the statute applies. Perhaps one reason for the dichotomy of treatment lies in the fact that T.C.A. § 55–8–162 concludes with the word "highway." A "highway" is defined in T.C.A. § 55–8–101(21) as "[t]he entire width between the boundary lines of every way when any part thereto is open to the use of the public for purposes of vehicular travel." Furthermore, T.C.A. § 55–8–162 is part of Chapter 8, entitled "Operation of Vehicles—Rules of the Road," of Title 55 of the Code. Pursuant to T.C.A. § 55–10–301, a person violating any of the provisions of Chapter 8 of Title 55, including T.C.A. § 55–8–162, is guilty of a Class C misdemeanor. Finally, T.C.A. § 55–8–102(a) provides that "[t]he provisions of [Chapter 8] of this Title relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways, except where a different place is specifically referred to in a given section."

■ Regrettably, each of the opinions by this Court involving vehicles that have been left unattended on private property (*Young, Martel,* and *Parker*) fails to provide any analysis whatever of general principles of negligence law, proximate causation in particular; nor was any attention given to explaining a justification for the dichotomy of treatment relative to public and private property. The focus in these cases was solely on the applicability of T.C.A. § 55–8–162. It would appear that if T.C.A. § 55–8–162 was enacted in an attempt to deter vehicles from being taken and accidents occurring subsequent thereto, as this Court in *Justus* took considerable pains to point out, that goal transcends the distinction between private and public property.[3] While we see little justification

---

**3.** It would seem that under the current state of the law, if the owner of the vehicle in this case had left his car a few feet further out from the bank so that it was in a street located in front of the bank, liability would potentially attach as the matter would go to a jury. However, because he left the car where he did, there is no liability as a matter of law. The rationale and

to foster the distinction currently entrenched in precedent, we need not decide this question in order to dispose of the case at hand. We are persuaded that whether the Plaintiff in this case should have his day in court does not depend on whether a statute imposing criminal sanctions applies. This is particularly true given the fact that the Plaintiff in this case seeks recovery based upon negligence per se (T.C.A. § 55–8–162, among others) *and* common law negligence.

## II.

Completely separate and apart from the statutes noted above, is the Plaintiff's right to pursue a common law theory of recovery predicated upon negligence. The question of a vehicle owner's liability for the consequences of an accident caused by a thief, enabled to misappropriate the vehicle through the presence of a key left in the ignition switch by the owner, is a frequently litigated question upon which there is considerable disagreement among the states. Professor Prosser notes that "[t]he opinions have run the gamut of all possible grounds, ranging from no duty through no lack of reasonable care to no proximate causation. Actually the problem appears to be a very simple one. Leaving a car [with the key in the ignition] certainly cre-

ates a foreseeable likelihood that it will be stolen, which endangers the interests of the owner; but is it so likely that the thief, getting away, will drive negligently, that there is any unreasonable risk of harm to anyone else?" Prosser and Keeton, *The Law of Torts*, § 44, p. 314 (5th ed. 1984). An accurate summary of the jurisprudence nationwide concerning the topic at hand was recently provided by the Supreme Court of New Mexico:

> "[A] substantial number of courts have not held owners liable for leaving the keys in their unattended vehicles and for the injuries to third persons as a result of the thefts and subsequent negligent operation of those vehicles. Those courts have concluded either that an owner owes no duty to the general public to guard against the risk of a thief's negligent operation of a vehicle in which the owner left his keys; that the theft and subsequent negligence of the thief could not reasonably be foreseen by the owner as a natural or probable consequence of leaving the keys in the ignition of the car; or have concluded that even if the owner was negligent, his actions were not the proximate cause of the injury because the thief's actions constituted an independent, intervening cause.[4]

justification for treating the two situations differently is suspect at best. Taking another example, if the owner of a vehicle leaves his car with the keys in the ignition alongside of a rural road in an area where public travel is sparse, the owner can be held liable if the vehicle is stolen and harm results under current precedent. However, no liability would attach if that same person left his vehicle unattended, complete with keys in the ignition, at the busiest shopping mall in the state on the busiest shopping day of the year. Again, the differing results are unsettling as a matter of policy and common sense. For a discussion and criticism of some of the early cases responsible for creating the distinction between public and private property, see "Negligence—Keys Left in Ignition—Theft from Private Property", 31 Tenn.L. Rev. 545 (1964); "Negligence—Keys Left in Ignition—Collision with Escaping Thief", 29 Tenn.L. Rev. 468 (1962); "Torts—Owner's Liability for Collision Subsequent to Vehicle Theft—Keys in Ignition", 24 Tenn.L.Rev. 395 (1956).

**4.** *See Bennett v. Arctic Insulation, Inc.,* 253 F.2d 652, 654 (9th Cir.1958); *Vines v. Plantation Motor Lodge,* 336 So.2d 1338, 1340 (Ala.1976);

*Richards v. Stanley,* 43 Cal.2d 60, 65, 271 P.2d 23, 26–27 (1954); *Lambotte v. Payton,* 147 Colo. 207, 209, 363 P.2d 167, 168 (1961); *Gamble v. Kinch,* 102 Idaho 335, 337, 629 P.2d 1168, 1170 (1981); *Dillner v. Maudlin,* 161 Ind.App. 204, 205, 314 N.E.2d 794 (1974); *Roadway Express, Inc. v. Piekenbrock,* 306 N.W.2d 784, 786 (Iowa 1981); *Roach v. Liberty Mut. Ins. Co.,* 279 So.2d 775, 777 (La.Ct.App.), *cert. denied,* 281 So.2d 756 (La.1973); *Berluchaux v. Employers Mut. of Wausau,* 194 So.2d 463, 465 (La.Ct.App.), *cert. denied,* 250 La. 533, 197 So.2d 79 (1967); *Galbraith v. Levin,* 323 Mass. 255, 259, 81 N.E.2d 560, 563–64 (1948); *Permenter v. Milner Chevrolet Co.,* 229 Miss. 385, 404, 91 So.2d 243, 252 (1956); *Dix v. Motor Mkt., Inc.,* 540 S.W.2d 927, 932–33 (Mo.Ct.App.1976); *Flannery v. Sample Hart Motor Co.,* 194 Neb. 244, 248, 231 N.W.2d 339, 342 (1975); *Pendrey v. Barnes,* 18 Ohio St.3d 27, 29, 479 N.E.2d 283 (1985); *Felty v. City of Lawton,* 578 P.2d 757, 760 (Okla.1977); *Liney v. Chestnut Motors, Inc.,* 421 Pa. 26, 28, 218 A.2d 336, 338 (1966); *Keefe v. McArdle,* 109 R.I. 90, 92, 280 A.2d 328, 329 (1971); *Stone v. Bethea,* 251 S.C. 157, 164, 161 S.E.2d 171, 174–75 (1968); *Pratt v. Thomas,* 80 Wash.2d 117, 119, 491 P.2d

"An emerging group of jurisdictions, on the other hand, have rejected the contention that an intervening criminal act automatically breaks the chain of causation as a matter of law, concluding instead that a reasonable person could foresee a theft of an automobile left unattended with the keys in the ignition and reasonably could foresee the increased risk to the public should the theft occur.[5] In addition, a few courts, including some of those that earlier denied liability, have indicated a willingness to impose liability upon the owner under special circumstances.[6] Courts looking at special circumstances seek to determine whether an owner's conduct enhanced the probability that his car would be stolen and thus increased the hazard to third persons. Considering special circumstances, then, is just another way of examining the degree of foreseeability of injury and whether the owner is subject to a duty to exercise reasonable care." [7]

*Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 763 P.2d 1153, 1164–65 (1988). See also, Annotation, *Liability for Personal Injury or Property Damage Caused by Unauthorized Use of Automobile Which had Been Parked With Keys Removed From Ignition [But Left Somewhere in the Vehicle],* 70 A.L.R.4th 276 (1989); Annotation, *Liability of Motorist Who Left Keys in Ignition for Damage or Injury Caused by Stranger Operating Vehicle,* 45 A.L.R.3d 787 (1972); *Restatement (Second) of Torts,* § 302B, comment d, illustration 2 (1965).

This Court is of the opinion that the approach taken by the substantial (and growing) number of jurisdictions representing the minority view is the approach that should be taken in Tennessee, in part, because principles of common law negligence long established in this state provide a sufficient analytical framework to dispose of cases with fact patterns similar to the one presented in this appeal. First, it is axiomatic that in order for there to be a cause of action for common law negligence, the following elements must be established: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. See *Lindsey v. Miami Dev. Corp.,* 689 S.W.2d 856, 858 (Tenn.1985); *Shouse v. Otis,* 224 Tenn. 1, 448 S.W.2d 673 (1969); *Ruth v. Ruth,* 213 Tenn. 82, 372 S.W.2d 285 (1963). Our opinions have recognized that proximate causation is the "ultimate issue" in negligence cases. *Lancaster v. Montesi,* 216 Tenn. 50, 390 S.W.2d 217, 220 (1965); *Roberts v. Robertson County Bd. of Ed.,* 692 S.W.2d 863, 871

---

1285, 1286 (1971); *Meihost v. Meihost,* 29 Wis.2d 537, 546, 139 N.W.2d 116, 121 (1966).

**5.** See *Gaither v. Myers,* 404 F.2d 216, 221 (D.C. Cir.1968); *Ross v. Hartman,* 139 F.2d 14, 16 (D.C.Cir.1943), *cert. denied,* 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944); *Mellish v. Cooney,* 1 Conn.Cir. 350, 23 Conn.Supp. 350, 183 A.2d 753, 754 (1962); *Vadala v. Henkels & McCoy, Inc.,* 397 A.2d 1381, 1383–84 (Del.Super. 1979); *Vining v. Avis Rent–A–Car Systems, Inc.,* 354 So.2d 54, 56 (Fla.1977); *Kacena v. George W. Bowers Co.,* 63 Ill.App.2d 27, 39, 211 N.E.2d 563, 569 (1965); *Davis v. Thornton,* 384 Mich. 138, 146, 180 N.W.2d 11, 15 (1970); *Zinck v. Whelan,* 120 N.J.Super. 432, 445, 294 A.2d 727, 733–34 (1972); *Itami v. Burch,* 59 Or.App. 400, 402, 650 P.2d 1092, 1093 (1982). *See also* 7A Am.Jur.2d "Intervening Causes" § 433 (1980).

**6.** See *Palma v. United States Indus., Fasteners, Inc.,* 36 Cal.3d 171, 185, 681 P.2d 893, 902, 203 Cal.Rptr. 626, 634 (1984); *Smith v. Shaffer,* 395 N.W.2d 853, 856 (Iowa 1986); *Illinois Farmers Ins. Co. v. Tapemark Co.,* 273 N.W.2d 630, 635 (Minn.1978); *Dix v. Motor Mkt., Inc.,* 540 S.W.2d 927, 932 (Mo.Ct.App.1976); *Felty v. City of Lawton,* 578 P.2d 757, 761 (Okla.1977).

**7.** See *Hosking v. Robles,* 98 Cal.App.3d 98, 102–03, 159 Cal.Rptr. 369, 372 (1979) (surveying what constitutes "special circumstances" in California); *Smith v. Shaffer,* 395 N.W.2d 853, 856 (Iowa 1986) (leaving keys in unattended car's ignition in high crime area near several bars constitutes special circumstances); *State Farm Mut. Auto. Ins. Co. v. Grain Belt Breweries, Inc.,* 309 Minn. 376, 381, 245 N.W.2d 186, 189 (1976) (same); *Lavo v. Medlin,* 705 S.W.2d 562, 564 (Mo.Ct.App.1986) (implying that special circumstances include parking unusually dangerous vehicle in high crime area with keys in ignition); *Zinck v. Whelan,* 120 N.J.Super. 432, 450, 294 A.2d 727, 736 (1972) (special circumstances are position and location of parked vehicle, access thereto, its operational condition, proximity to surveillance, and length of time elapsing from theft to accident).

(Tenn.App.1985). This is particularly true in cases involving the situation where keys are left in the ignition of an unattended vehicle that is subsequently stolen as a result.

Taken as a whole, our cases suggest a three-pronged test for proximate causation: (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. See *Smith v. Gore*, 728 S.W.2d 738, 749–50 (Tenn.1987); *Ford Motor Co. v. Eads*, 224 Tenn. 473, 457 S.W.2d 28, 32 (1970); *Ray Carter, Inc. v. Edwards*, 222 Tenn. 465, 436 S.W.2d 864, 867 (1969); *Lancaster v. Montesi*, 216 Tenn. 50, 390 S.W.2d 217, 221 (1965); *Roberts v. Robertson County Bd. of Ed.*, 692 S.W.2d 863, 871 (Tenn.App.1985); *Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 541–43 (Tenn.App. 1981); *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276, 280–81 (Tenn.App. 1977). The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. *Roberts* at 871; *Wyatt* at 280–81. "The fact that an accident may be freakish does not *per se* make it unpredictable or unforeseen." *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn.1976). It is sufficient that harm in the abstract could reasonably be foreseen. *Shell Oil Co. v. Blanks*, 46 Tenn.App. 539, 330 S.W.2d 569, 572 (1959). Finally, proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome. *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn.1981); *City of Elizabethton* at 117; *Frady v. Smith*, 519 S.W.2d 584, 586 (Tenn.1974); *Phelps v. Magnavox Co. of Tenn.*, 62 Tenn.App. 578, 466 S.W.2d 226 (1970); *Kroger Co. v. Giem*, 215 Tenn. 459, 387 S.W.2d 620, 625 (1964).

With respect to superseding intervening causes that might break the chain of proximate causation, the rule is established that it is not necessary that tortfeasors or concurrent forces act in concert, or that there be a joint operation or a union of act or intent, in order for the negligence of each to be regarded as the proximate cause of the injuries, thereby rendering all tortfeasors liable. See *Cartwright v. Graves*, 182 Tenn. 114, 184 S.W.2d 373, 381 (1944); *Whitehurst v. Howell*, 20 Tenn.App. 314, 98 S.W.2d 1071, 1081 (1936); *Morris v. Bolling*, 31 Tenn. App. 577, 218 S.W.2d 754, 758 (1949). There is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result. *Lancaster*, 390 S.W.2d at 221; *Kroger Co.*, 387 S.W.2d at 626; *Roberts* at 871. An intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm. *Solomon v. Hall*, 767 S.W.2d 158, 161 (Tenn.App.1988). "An intervening act will not exculpate the original wrongdoer unless it appears that the negligent intervening act could not have been reasonably anticipated." *Evridge v. American Honda Motor Co.*, 685 S.W.2d 632, 635 (Tenn.1985); *Ford Motor Co. v. Wagoner*, 183 Tenn. 392, 192 S.W.2d 840, 843 (1946). See also *Restatement (Second) of Torts*, Section 447 (1965). "It is only where misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed for consequences to which such intervening acts contributed." Prosser, supra. Just as in the case of proximate causation, the question of superseding intervening cause is a matter

peculiarly for the jury because of foreseeability considerations. See *Brookins* at 550; *Evridge* at 635; *Young v. Reliance Electric Co.*, 584 S.W.2d 663, 669 (Tenn. App.1979).

### III.

Giving foremost consideration to the established principles of common law negligence discussed above, we conclude, as many other jurisdictions have, that leaving a key in the ignition of an unattended automobile in an area where the public has access, be it public or private property, could be found by a reasonable jury to be negligent, whether or not a prohibitory statute is involved. The mere fact that an automobile is parked on private property and no statute is violated should not in all cases dictate a determination of absolute non-liability. The basic issue is foreseeability, both as to proximate causation and superseding intervening cause, and that is a question of fact rather than of law upon which reasonable minds can and do differ, at least where the accident has occurred during the flight of the thief relatively close thereto in time and distance.[8] The fact that our Legislature has deemed it necessary as a matter of public safety to enact T.C.A. § 55-8-162, see *Justus, supra*, further attests to a general recognition of the hazard in question and its potential for great harm to innocent users of the highway such as the members of the Plaintiff's family who were killed and injured in this case. We thus expressly reject the contention that an intervening criminal act under the circumstances presented here automatically breaks the chain of causation as a matter of law, concluding instead that reasonable minds can differ as to whether a person of ordinary prudence and intelligence through the exercise of reasonable diligence could foresee, or should have foreseen, the theft of an unattended automobile with the keys in the ignition left in an area where the public has access, and could likewise foresee the increased risk to the public should a theft occur. This was the holding in *Justus* in the situation where the vehicle was left on public property and we see no compelling justification for not applying the same analysis when the vehicle is left unattended on private property to which the public has ready access as in the case at bar. In sum, a jury might conclude in this case that a reasonable person would not have left the keys in the ignition of his unattended car parked in a lot where the public had ready access. As a result, the decisions with regard to foreseeability as it relates to proximate cause and intervening cause should properly be submitted to a jury.

Nothing, however, stated hereinabove is intended to imply that a fact-finder could not reasonably return a verdict for the car owner in this case, or that the evidence in some comparable situation might not possibly justify even a judgment for the vehicle owner as a matter of law. Determinations in this regard must necessarily depend on the entire circumstantial spectrum, such as the position of the vehicle and the nature of the locality in which the vehicle is left, the extent of access thereto, operational condition of the vehicle, its proximity to surveillance, the time of day or night the vehicle is left unattended, and the length of time (and distance) elapsing from the theft to the accident. See *Justus*, 349 S.W.2d at 794.

For the foregoing reasons, the judgment of the trial court is reversed and the case remanded for proceedings consistent with this opinion. Costs of this appeal are taxed to the Defendant.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

---

8. A study conducted by the United States Department of Justice reveals that 42.3 percent of all automobiles stolen during the period covered by the study were left unattended with the keys in the ignition and that the rate of accidents involving such stolen vehicles was 200 times the normal accident rate. See 45 A.L.R.3d at 797.