# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 28, 2011 Session

## MARQUETTE WEAVER v. FOUR MAPLES HOMEOWNERS ASSOCIATION and WESTWOOD MANAGEMENT CORPORATION

**Direct Appeal from the Circuit Court for Davidson County**
**No. 09C3153     Barbara N. Haynes, Judge**

---

**No. M2011-01101-COA-R3-CV - Filed October 24, 2011**

---

This is a premises liability case in which the Plaintiff/Appellant, a resident of Defendants/Appellees' condominium complex, was assaulted by unknown individuals. Appellant filed suit, asserting negligence on the part of Appellees in failing to timely repair a vehicle access gate on the property.   The trial court granted summary judgment to Appellees, finding that Appellees owed no duty to Appellant as the harm was not reasonably foreseeable.  We conclude that the evidence creates a dispute as to whether the underlying assault was foreseeable and, therefore, the grant of summary judgment was erroneous. Reversed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Marquette Weaver.

Thomas J. Smith, Nashville, Tennessee, for the appellees, Four Maples Homeowners Association and Westwood Management Corporation.

## OPINION

On June 12, 2009, Mr. Marquette Weaver ("Appellant") was a resident of a condominium community in Nashville known as Four Maples.  Four Maples is overseen and managed by the Westwood Management Corporation ("Westwood").  Westwood manages Four Maples off-site, and does not employ a manager on the premises.  At all times relevant, Mr. Weaver was renting the condominium from its owner, Neal Cox, under a one-year lease.

Mr. Weaver was not a member of the Four Maples Homeowners Association ("Four Maples," and together with Westwood, "Appellees").

The Four Maples community maintained a gate that controlled motor vehicle access to the community's parking lot. Residents of Four Maples, as well as renters, received a remote control for the gate in addition to an access code to operate the vehicle gate through a touch-key system. During evening hours, the access gate remained closed; therefore, anyone desiring to enter the complex by motor vehicle had to open the gate with a remote control or had to enter using the keypad. However, during daylight hours, the vehicle access gate was open and any vehicle could enter Four Maples during that time.

Despite having the access gate for motor vehicle traffic, it is undisputed that Four Maples was not a "gated community," as it was not completely surrounded by gating or fencing that would prevent access to individuals on foot. Although portions of Four Maples are surrounded by a combination chain-link fence and wooden privacy fencing, the front of the community does not have any fencing whatsoever. Rather, unlocked doors, located at the front of the community buildings, allow access to Four Maples. In addition, it is undisputed that Four Maples does not have a security guard on staff, nor does it use security cameras or video surveillance equipment on the property.

On May 9, 2009, a car that was driven by a non-party visitor hit and damaged the access gate, rendering it inoperable. Soon after the gate was damaged, Westwood was notified. Westwood then contacted Access Gate Company to have the gate repaired. After the gate was damaged, but before the repairs were made, the access gate was left open, both day and night, to allow vehicle ingress and egress.

On June 12, 2009, at approximately 2:00 a.m., Mr. Weaver was asleep in his rented condominium when two people broke down the front door and shot Mr. Weaver several times. After the assault, Mr. Weaver was able to run into the parking lot. It is unclear from the record whether the assailants left on foot or by vehicle.

On September 10, 2009, Mr. Weaver filed a complaint against Westwood and Four Maples, alleging negligence. Specifically, Mr. Weaver's complaint stated that his assailants "were able to enter Four Maples unimpeded because the security gate was inoperative, and had been [so] for not less than one month before the incident." Moreover, Mr. Weaver averred that the Appellees "had actual knowledge of this ongoing breach of security, but negligently failed to remedy same in a timely fashion." Claiming that it was reasonably foreseeable that the inoperative security gate would allow unauthorized persons to enter the complex, Mr. Weaver asserted that the Appellees, individually and collectively, had a duty to see that the gate was operable. In failing to do so, Mr. Weaver contends that the Appellees

were negligent and that their negligence was the direct and proximate cause of the injuries he sustained. On December 3, 2009, Westwood and Four Maples filed a joint answer, in which they denied any negligence. In addition to denying the material allegations contained in the complaint, Appellees further asserted the affirmative defenses of: (1) superseding intervening cause (i.e., Mr. Weaver's injuries were caused by unknown assailants); (2) failure to state a claim upon which relief may be granted; (3) comparative fault; and (4) assumption of the risk (due to Mr. Weaver's knowledge that Four Maples was not a "gated community").

On March 1, 2011, Four Maples and Westwood filed a motion for summary judgment, along with a statement of undisputed material facts, and the affidavit of Betty Flinkow, the Four Maples property manager, in support thereof. Mr. Weaver opposed the motion for summary judgment in a response filed on March 23, 2011. In his response, Mr. Weaver states, *inter alia*, that, shortly before his assault, "there was an incident where a tenant had the same thing happen to them except there was no shooting." To support this statement, Mr. Weaver attached the sworn statement and report of Police Captain Klog, outlining an incident that took place in the complex on June 10, 2009, *see* discussion *infra*.[1] In her affidavit, Ms. Flinkow states that neither she, nor anyone else from Westwood knew about the June 10, 2009 incident. On April 6, 2011, Appellees filed a reply to Mr. Weaver's response, wherein they specifically argue that Captain Klog's report is inadmissible hearsay. The record does not indicate that the trial court ever ruled on this question.

A hearing on the motion for summary judgment was held on April 8, 2011; there is no transcript of this hearing in the appellate record. By Order of April 28, 2011, the trial court granted Appellees' motion, and specifically found that:

> 3. At the date and time of the incident . . . the vehicle access gate that controlled vehicle entry onto the Four Maples Community during evening hours was being repaired and rebuilt, and therefore was not operational. The Defendants could not have reasonably foreseen that unknown intruders would break down the Plaintiff's door and shoot him multiple times during the overnight hours of June 12, 2009.
>
> 4. The Defendants had no notice whatsoever that the Plaintiff was at risk or in danger of harm as a result of the vehicle access gate being under repair, and the injuries sustained by the Plaintiff at the hands of the criminal third parties were not in any way foreseeable to the Defendants just because the vehicle

---

[1] Captain Klog's first name is illegible on both the report and the sworn statement.

access gate was under repair at the time.

5.  Without any notice of a threat of harm to the Plaintiff, the Defendants had no legal duty to protect the Plaintiff from such harm, and therefore the Defendants did not owe a duty of care to the Plaintiff.  The Defendants here had no notice or any other knowledge from which they could have reasonably foreseen that the Plaintiff was under a reasonable likelihood of harm as a result of the vehicle access gate being under repair, and an injury which could not have been foreseen or reasonably anticipated as the result of an act of negligence, if there even was such an act of negligence, is not actionable against Defendants.

6.  In this case, it was the criminal actions of the unknown intruders that caused the Plaintiff's injuries, and the criminal actions of unknown intruders were a superseding, intervening cause of the Plaintiff's injuries, and [] were in fact the proximate cause of the Plaintiff's injuries.

7.  No act or omission on [the] part of the Defendants was the cause in fact or the proximate cause of the Plaintiff's injuries. [changed only the spacing]

Based upon these findings, the trial court granted the motion for summary judgment. Mr. Weaver appeals.  The sole issue for review is whether the trial court erred in granting Defendants/Appellees' motion for summary judgment.

## Summary Judgment

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn.1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." ***Mathews Partners, L.L.C . v. Lemme***, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *3 (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50–51 (Tenn.1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may

accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id***. at 5 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn.2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners***, 2009 WL 3172134, at *3 (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id***. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn.1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any

motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id*. at 24-25.

## **Negligence**

The elements of negligence are: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."[2] *Giggers v. Memphis*

_____

[2] "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn.1993). "Proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn.1991).

In *Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn. 1993), our Supreme Court said:

Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. *Bradshaw [v. Daniel]*, 854 S.W.2d [865, 869 (Tenn.1993)]; *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991); *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn.1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences*, 90 Yale L.J. 1353, 1355 n.7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. *McKellips v. Saint Francis Hosp*., 741 P.2d 467 (Okla. 1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.'" *Id*. at 470 (quoting Prosser and Keeton, The Law of Torts 266 (5th ed. 1984)).

*Id*. at 598.

In Tennessee, there is a three-pronged test for proximate causation: (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has

(continued...)

*Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006)). In this case, Mr. Weaver's claim of negligence sounds in premises liability, i.e., the Appellees were negligent in allowing a dangerous condition (the broken access gate) to exist on the premises. For the owner or operator of a premises to be held liable for negligence in allowing a dangerous condition to exist on their premises, the plaintiff must prove the foregoing elements of negligence and, in addition, must show that: "(1) the condition was caused or created by the owner, operator, or his or her agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair v. W. Town Mall*, 130 S.W .3d 761, 764 (Tenn. 2004) (citing *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App.1996)).

Because Mr. Weaver's injuries were caused by unknown assailants, this case also involves the question of what, if any, liability a premises owner/operator has for the criminal acts of third-parties. Until fairly recently, the leading case on the liability of property owners to protect against the criminal acts of third persons was *Cornpropst v. Sloan*, 528 S.W.2d 188, 93 A.L.R.3d 979 (Tenn. 1975) (abrogated by *McClung v. Delta Square Ltd. Partnership,* 937 S.W.2d 891 (Tenn. 1996)). The plaintiff in *Cornpropst* was assaulted and almost kidnapped in a shopping center parking lot as she was walking to her car. She sued the shopping center's owners, operators, and tenants for negligently failing to provide adequate security measures to protect customers from reasonably foreseeable criminal conduct. The Tennessee Supreme Court, in a 4-1 opinion, rejected her claim, and established the following rule:

> There is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against

---

[2](...continued)
resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn.1991).

such act arises.

*Cornpropst*, 528 S.W.2d at 198. Justice Henry's dissent in *Cornpropst* argued that the Court's ruling "afford[ed] virtually no protection to shopping center invitees … and virtually immuniz[ed] the owner against liability." *Id*. at 200. Indeed, a review of the Tennessee appellate decisions after *Cornpropst* reveals that the decision established a very difficult threshold for plaintiffs to cross. *See, e.g.*, *Lewter v. O'Connor Management Inc.*, 886 S.W.2d 253 (Tenn. Ct. App. 1994) (abrogated by, *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891 (Tenn. 1996)); *Gray v. McDonald's Corp.*, 874 S.W.2d 44 (Tenn. Ct. App. 1993) (abrogated by, *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891 (Tenn. 1996)); *Page v. American Nat. Bank & Trust Co.*, 850 S.W.2d 133 (Tenn. Ct. App. 1991) (abrogated by, *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891 (Tenn. 1996)).

The *Cornpropst* rule was expanded to apply to other situations as well. For example, *Cornpropst* was followed in *Dellinger v. Pierce*, 848 S.W.2d 654 (Tenn. Ct. App. 1992), barring recovery for a plaintiff assaulted in the lobby of defendant's theater. Likewise, *Cornpropst* was followed in *Louria v. Brummett*, 916 S.W.2d 929 (Tenn. Ct. App. 1995) to affirm a dismissal of a case against defendant K-Mart Corporation in which the plaintiff was shot by a gun stolen from the store. In *Louria*, plaintiff alleged that K-Mart negligently stored the guns. Although the *Cornpropst* Court rejected plaintiff's claims on a duty analysis, later decisions often mentioned that the conduct of the criminal was a superseding cause. *See, e.g., Louria*, 916 S.W.2d at 930.

As the caselaw developed in this area, it became apparent that there are certain circumstances in which a defendant may be held potentially liable for the defendant's role in creating conditions in which crime could occur. For example, in *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991), plaintiff was struck by a stolen car as the assailant attempted to flee from police. The Court held that liability existed where a defendant had left the keys in the ignition of the car in a lot where the public had ready access, allowing the assailant to steal the car. *Id*. Likewise, in *Zang v. Leonard*, 643 S.W.2d 657 (Tenn. Ct. App. 1982), this Court held that *Cornpropst* did not apply to an assault against a guest of a motel who was shot and robbed in the motel parking lot.

On October 28, 1996, *Cornpropst* was overruled by the Tennessee Supreme Court in *McClung v. Delta Square Limited Partnership*, 937 S.W.2d 891 (Tenn. 1996). In *McClung*, the Court ruled that "businesses [must] take reasonable measures to protect their customers from foreseeable criminal attacks." *Id*. at 899. The Court explained its holding as follows:

A business ordinarily has no duty to protect customers from the

criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.

*McClung*, 937 S.W.2d at 902.

As discussed in 17 Tennessee Practice, Tennessee Law of Comparative Fault § 6:10 (2011):

In determining the duty that exists, the foreseeability of harm and the gravity of harm must be balanced against the commensurate burden imposed on the business to protect against that harm. In cases in which there is a high degree of foreseeability of harm and the probable harm is great, the burden imposed upon defendant may be substantial. Alternatively, in cases in which a lesser degree of foreseeability is present or the potential harm is slight, less onerous burdens may be imposed. By way of illustration, using surveillance cameras, posting signs, installing improved lighting or fencing, or removing or trimming shrubbery might, in some instances, be cost effective and yet greatly reduce the risk to customers. In short, "the degree of foreseeability needed to establish a duty decreases in proportion to the magnitude of the foreseeable harm" and the burden upon defendant to engage in alternative conduct. "As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution."

As a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises. Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the

cause of action. To hold otherwise would impose an undue
burden upon merchants.

*Id*. (quoting *McClung*, 937 S.W.2d at 905). However, there is no requirement that the defendant must anticipate the exact manner of the injury in order to justify a finding of foreseeability. As our Supreme Court stated in *McClenahan v. Cooley*, 806 S.W.2d 767(Tenn. 1991), the foreseeability requirement:

> . . . is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. [citations omitted] "The fact that an accident may be freakish does not per se make it unpredictable or unforeseen." *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn.1976). It is sufficient that harm in the abstract could reasonably be foreseen. *Shell Oil Co. v. Blanks*, 46 Tenn.App. 539, 330 S.W.2d 569, 572 (1959).

*McClenahan*, 806 S.W.2d at 775.

In the instant case, and as set out in full context above, the trial court specifically found that the Appellees "could not have reasonably foreseen that unknown intruders would break down [Mr. Weaver's] door and shoot him multiple times during the overnight hours of June 12, 2009," and that the Appellees "had no notice whatsoever that [Mr. Weaver] was at risk or in danger of harm." Based upon the record, these conclusions seem presumptive. Although, throughout these proceedings, the Appellees have maintained that they could not reasonably foresee that there would be any type of criminal activity in the complex, the evidence in record creates a dispute concerning this question. As mentioned above, the sworn statement of Captain Klog, and the report attached thereto, indicate that, on June 10, 2009 (two days prior to the incident involving Mr. Weaver), at approximately 3:20 a.m., the police received a call from a resident of Four Maples. When questioned, the victim of the June 10, 2009 incident stated that she was asleep when her living room door was kicked in by unknown suspects. As discussed above, Appellees argued that the police report was inadmissible hearsay; however, there is no indication that the trial court ruled on this question. However, the trial court's order states that "the affidavit of Keeper of Records for the Metropolitan Police Department Records Division" was one of the items considered by the court in reaching its decision to grant Appellees' motion for summary judgment. Given the fact that there was a prior incident in the same complex, which occurred in a manner very similar to Mr. Weaver's assault, there is at least some dispute as to whether Four Maples was,

or should have been, aware that criminal activities on the property were reasonably foreseeable such that Appellees would have a duty to protect Mr. Weaver against the harm he suffered. The fact that Ms. Finkow's affidavit states that Westwood had no knowledge of the June 10, 2009 incident only supports our conclusion that there is a dispute concerning what Appellees knew, or should have known, concerning criminal activity in the complex and what effect, if any, that knowledge (or lack thereof) should have on the questions of foreseeability and duty.

In granting the Appellees' motion for summary judgment, the trial court also specifically found that "the criminal actions of unknown intruders were a superseding, intervening cause of [Mr. Weaver's] injuries, and [] were in fact the proximate cause of the Plaintiff's injuries." Concerning whether the criminal acts of third-parties constitute superseding causes, the *McClung* Court rejected the defendants' argument that the acts of unknown criminals constitute superseding causes as a matter of law:

> There is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result. An intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm.

*McClung*, 937 S.W.2d at 905 (Tenn. 1996) (relying upon *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994)). Perhaps more importantly, the *McClung* Court also reminded us that issues of proximate cause (including superseding cause) are jury questions "unless the uncontroverted facts and inferences to be drawn from the facts make it so clear that all reasonable persons must agree on the proper outcome."[3] *Id*. at 905.

The trial court's finding that the acts of the unknown criminals in this case were a

---

[3] The following cases have applied *McClung*: *Hepp v. Joe B'S, Inc.*, No. 01A01-9604-CV-00183, 1997 WL 266839 (Tenn. Ct. App. May 21, 1997) (finding no duty under *McClung* simply because music was loud in defendant's bar and number of staff was alleged to be inadequate); *Shofner v. Red Food Stores (Tennessee), Inc.*, 970 S.W.2d 468 (Tenn. Ct. App. 1997) (holding that the mere fact that young people congregate in a parking lot on weekend nights and drink beer is not enough to trigger a duty under *McClung*).

superseding cause so as to bar recovery by Mr. Weaver is too conclusory following the ***McClung*** Court's holding that intervening criminal acts are not superseding causes **as a matter of law**. In short, although intervening criminal acts may constitute superseding causes, that finding is not a foregone conclusion. Rather, the question of superseding causation also requires a finding that the act was reasonably foreseeable. In other words, a criminal act is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm. ***McClung***, 937 S.W.2d at 905.

From our review of the entire record, we conclude that the facts and inferences to be drawn from those facts create a dispute as to whether the criminal assault on Mr. Weaver was foreseeable. We are especially troubled by the fact that the trial court appears to have overlooked Captain Klog's report that there was a prior assault in the complex. The existence of this report at least creates a question as to what the Appellees knew, or should have known, concerning any criminal activity on the property. Reviewing the evidence in the light most favorable to the Mr. Weaver, as the nonmoving party, and drawing all reasonable inferences in his favor, ***Stovall v. Clarke***, 113 S.W.3d at 721, we conclude that there is a genuine issue as to whether the Appellees had any duty to protect Mr. Weaver against the harm that occurred. Although the question may be a close one, where there is uncertainty as to whether there may be such a dispute of fact (or inference therefrom), the duty of the trial court is clear; he or she is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues. ***Evco***, 528 S.W.2d at 24–25. Because Appellees failed to either affirmatively negate an essential element of Mr. Weaver's negligence claim, or show that Mr. Weaver cannot prove an essential element of his claim at trial, the burden did not shift to Mr. Weaver to demonstrate a genuine issue of material fact, and summary judgment in Appellees' favor was improperly granted. ***Hannan***, 270 S.W.3d at 8–9.

For the foregoing reasons, we reverse the order of the trial court, granting summary judgment in favor of Appellees. The case is remanded for such further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed against the Appellees, Four Maples Homeowners Association and Westwood Management Corporation, for which execution may enter if necessary.

_____
J. STEVEN STAFFORD, JUDGE

-12-