IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

October 3, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

ELMER RICHARDSON, Individually, ) KNOX COUNTY
and as Surviving Spouse of       ) 03A01-9602-CV-00049
Goldie H. Richardson, Deceased   )
                                 )
          Plaintiff-Appellee     )
                                 )
                                 )
          v.                     ) HON. HAROLD WIMBERLY,
                                 ) JUDGE
                                 )
CITY OF KNOXVILLE                )
                                 ) AFFIRMED AS MODIFIED
          Defendant-Appellant    ) and REMANDED


SHARON E. BOYCE OF KNOXVILLE FOR APPELLANT

JOHN T. JOHNSON, JR., OF KNOXVILLE and BILL FAIN OF SEYMOUR FOR APPELLEE


O P I N I O N


Goddard, P.J.


The City of Knoxville appeals judgments rendered in favor of Elmer Richardson, surviving spouse of Goldie H. Richardson, for personal injuries received by him and the wrongful death of his wife in the amount of $30,000, and $130,000, respectively.

The City raises the following three issues:

I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE CITY OF KNOXVILLE WAS 60 PERCENT AT FAULT AND THE UNKNOWN DRIVER AND DRIVER, ELAINE WASHAM WHALEY WERE JOINTLY 40 PERCENT AT FAULT.

II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE CITY OF KNOXVILLE WAS NOT IMMUNE FROM SUIT UNDER TENNESSEE CODE ANNOTATED SECTION 29-20-203.

III. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF DR. GARY LETHCO AS TO THE CAUSE OF GOLDIE RICHARDSON'S DEATH UNDER TENNESSEE RULE OF EVIDENCE 703.

The accident giving rise to this suit occurred on June 8, 1992, when an automobile being operated by Elaine Washam Whaley, crashed through a fence enclosing the Richardsons' property, violently struck the front porch of their residence where they were sitting, knocking down a brick wall enclosing the porch and showering brick on them. Both were injured and Mrs. Richardson died one month later, on July 8, 1992.

The Richardsons' residence sits at the intersection of Higgins Avenue, which runs generally in a north and south direction, and Young High Pike, which runs generally in an east and west direction. Tomlinson Street, which runs in a north and south direction, intersects Young High Pike, just east of Higgins Avenue. (See appendix.)

Prior to the time of the accident, about 10:45 a.m., it had been raining heavily and the streets were wet. Ms. Whaley

was returning to her home, traveling in a westerly direction on Young High Pike, which has a 30 mile-per-hour speed limit. She was traveling at approximately 25 miles per hour, intending to turn right onto Higgins Avenue. As she approached Higgins, another car, whose driver was never identified, relying upon Ms. Whaley's right turn signal, which she had activated, pulled into Young High Pike, intending to turn left and travel in an easterly direction. Although Ms. Whaley is unsure about the movement of her car, the most reasonable explanation is that offered by an employee of the City's Traffic Engineering Department that Ms. Whaley drove her vehicle off the right side of the road, then over corrected, crossing the road, driving through the fence, and then into the brick wall enclosing the porch.

The area encompassing the intersection of Young High Pike and Higgins Avenue had been the scene of a number of accidents, which are accurately set out in Mr. Richardson's brief:

> Between January 1, 1986 and June 8, 1992, there were twenty automobile accidents in the immediate vicinity of the intersection where the accident occurred out of which this lawsuit arises. On October 20, 1987, a vehicle crashed into the fence at the property which ultimately the Richardsons purchased. The Richardsons purchased the subject property in the spring of 1990. In May 1990, another vehicle ran off the road into the Richardsons' yard and knocked down a fence. On May 18, 1991, a motorcycle struck a fence on the Richardsons' property. On November 10, 1991, a motorcycle encroached upon the Richardsons' property and the driver was killed. On May 21, 1992, another vehicle struck the Richardsons' fence and crashed into the Richardsons' automobile, which was parked in the driveway.

3

Ms. Whaley describes the accident and her actions as follows:

Q.      And that day what were you going to do?

A.      Well, I was going back and turn on Higgins, but a car pulled out in front of me, and I guess I pretty well much panicked when it pulled out in front of me, and I probably turned a little bit too sharp.

Q.      Do you remember when you went up on the right side of Higgins up in the grass with your car?

A.      Pretty well much so.  I must have hit my brakes, 'cause I started sliding.

Q.      Then what happened after that, after you got up in the grass on the right side of Higgins --

A.      I hit the fence.

Q.      You're talking about the fence on Higgins at the Richardsons' house?

A.      Yes.  And the last thing I remember going over this, but whenever I did that evidently I froze, and I must have still had my foot on the brake, and I continued to slide.  I must have had my foot on the brake and the gas at the same time, because I continued to slide into the house.

. . . .

Q.      I believe at your deposition you drew a diagram, Exhibit 1 to your deposition, showing the other car that pulled out in front of you on Young High Pike?

A.      Uh-huh.  Because I was trying to make the turn, and I guess I got scared, and whenever I made that turn, she pulled out in front of me and I was making my turn.  And I think what I did was, instead of hitting my brakes, I think I was here, must have slid over here.  There's a -- it's -- I don't know what you would call it, it's like a hump in the road, and it's right around this area right here, about right in the center of this area, and that's when my control arm on my car broke, and I lost complete control of my car.

4

The City had ample notice of the hazard and had been repeatedly requested by the Richardsons' daughter to take corrective measures.

Turning to the issues on appeal, it appears, as already noted, that Ms. Whaley was startled by the vehicle proceeding from Higgins into Young High Pike, drove her vehicle off the right edge of the pavement and over corrected, driving through the fence into the porch. She, herself, admitted that she panicked and pressed both the gas and brake pedals. She also pleaded guilty to "driving too fast for the road conditions," and paid a fine.

Although the Trial Court did not set the damages sustained by Mr. Richardson individually and as surviving spouse, he granted judgments of $30,000 and $130,00,[1] respectively. We calculate from this that the total damages he found as to Mr. Richardson's personal injury claim was $50,000, and as to his claim as surviving spouse $217,000.[2]

The standard of review for a trial court's determination of the comparative fault of those involved in an accident is not entirely clear. In Wight v. City of Knoxville,

---

[1] $130,000 is the maximum allowable under present law.

[2] No complaint is made that the total amount of damages found by the Court ($50,000 and $217,000) was excessive.

5

898 S.W.2d 177, 181 (Tenn. 1995), the Supreme Court addressed the question as follows:

> Although it is true that the trier of fact has considerable latitude in allocating percentages of fault to negligent parties, see e.g., Martin v. Bussart, 292 Minn. 29, 193 N.W.2d 134 (1971), appellate courts may alter those findings if they are clearly erroneous. Because this case was tried without a jury, our review of the issues of fact is de novo on the record of the trial court. However, we must presume that the trial court's findings were correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 27-3-103; Tenn. R. App. P. 13(d).

This appears to suggest two different standards. One "clearly erroneous," and the other the traditional non-jury standard, which is a review de novo with a presumption of correctness "unless the preponderance of the evidence is otherwise." Rule 13(d), Tennessee Rules of Appellate Procedure.

Wright quotes from Martin v. Bussert, 193 N.W.2d 134 (Minn. 1971), wherein the Supreme Court of Minnesota stated its standard of review to be the following (at page 139):

> Upon a review of a jury's apportionment of negligence between tortfeasors . . . we will not substitute our judgment for that of the jury unless there is no evidence reasonably tending to sustain the apportionment or the apportionment is manifestly and palpably against the weight of the evidence.

It would be noted that the Minnesota case was a jury case, while Wright was non-jury. We accordingly conclude that in non-jury cases the proper rule is set out in Rule 13(d), and also believe that in jury cases the rule is the traditional one-- material credible evidence to support the verdict.

6

In reaching our conclusion, we are not unmindful of two cases by the Western Section of this Court, <u>Nichols et al. v. Metropolitan Government of Nashville and Davidson County</u>, filed in Nashville on July 12, 1996, and <u>Griggs v. James P. Mixon and others</u>, filed in Jackson on August 6, 1996, both of which adopt the clearly erroneous standard. We believe, as already noted, however, that our Supreme Court, at least insofar as non-jury cases are concerned, intended to apply the standard set out in Rule 13(d) of the Tennessee Rules of Appellate Procedure.

In light of Ms. Whaley's testimony hereinbefore set out, and the fact that she had lived in the vicinity eight or nine years and was intimately familiar with the intersection, we conclude that upon applying the preponderance of the evidence rule to this issue, that the negligence of Ms. Whaley and the unknown driver was greater than that of the City, and that 60 percent of the negligence should be attributed to Ms. Whaley and the unknown driver and 40 percent to the City.

Apropos of the City's second issue, T.C.A. 29-20-203, as pertinent to this appeal, provides the following:

> **29-20-203. Removal of immunity for injury from unsafe streets and highways -- Notice required.--** (a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.
>
> (B) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in

7

addition to the procedural notice required by § 29-20-302 [repealed].

The City argues that the evidence preponderates against the Trial Court's following findings relative to the statute:

THE COURT: At the end of the trial on this I asked for some time to review all the evidence and exhibits, and it took all day, and the authorities that we talked about. And of course what we have is a situation where the plaintiffs are seeking recovery based on a theory that the City maintained defective and unsafe streets, specifically this intersection in front of the house where the plaintiffs lived.

The defendant, of course, denied that there was any unsafe or defective condition of the streets there, claimed immunity, and in any event, contended that the cause of the incident was solely the negligence of the drivers involved in this particular incident. The evidence showed that this was an old part of town, old intersection consisting of narrow streets, that it went off at what would be considered today odd angles. And that this intersection, at the time of this incident, was experiencing increased traffic due to construction of a shopping center and some other factors that we went over in trial.

After reviewing all the evidence, the Court concludes that this intersection was one that I think could be best described as an intersection where vehicles were likely to get in trouble; and if a vehicle did get in trouble, for whatever reason, that vehicle was likely to wind up in plaintiffs' yard or on plaintiffs' property, and that happened several times before. Now, the best explanation of the reason for this, I think, was concluded in witness Black's testimony, where he said that this was a very confusing intersection, and that anyone approaching that intersection really had no guidance as to where they should be or where other cars should be. And that this type of accident, the one that occurred here, was the type of accident that would likely result from this configuration, if you will, of the intersection.

Now, the City, through its witnesses, made much of the fact that this particular accident was not one that had occurred before, and was not one that would likely be foreseen. As to foreseeability, the courts have adopted tests contained in this case, McClenahan versus Cooley, 806 S.W.2d 767, and that case cited an earlier case of City of Elizabethton versus Sluder, at 534

8

S.W.2d 115. And those cases stand for the proposition that even without any previous accident occurring, it's sufficient that the harm in the abstract could reasonably be foreseen. As I said, the Court has concluded from the evidence in this case that the situation was that it could be foreseen, that if anybody got in difficulty out there they were likely to end up in plaintiffs' property; and you would get in difficulty out there because of the confusing nature of this intersection and the narrow streets and all the other things that made up this particular intersection.

So the results of my analysis of this situation is that I feel that this was therefore an unsafe intersection, that it could have been corrected, and actually the proof is, with very little effort and expense, corrected to the extent that this kind of a thing, where people come up there and they get confused about who's going where and react accordingly, would not have occurred. In fact, I think the proof in this case is that actually when remedial steps were taken that no further intrusive accidents on this property occurred.

So we conclude the City is not immune here, because this is simply a defective street type situation. They had plenty of notice. There's no question about notice here. The plaintiffs' representative, if you will, their daughter, testified that she had complained for a period of time to the City. In fact, said, you know if something is not done here someone is going to come in the yard and hurt or injure or kill my parents. Unfortunately, that is what happened. There's not a question of notice here at all.

Our review of the record persuades us that the Trial Court correctly found the intersection in question to be unsafe.

As to the third issue, the City insists that the deposition of Mrs. Richardson's family physician, Dr. Lethco, should not have been admitted into evidence. His testimony, which opined that Mrs. Richardson's death was caused "from massive pulmonary emboli, which were brought about by the trauma to her lower extremities."

This assertion is predicated upon the City's contention that Dr. Lethco was relying upon a death certificate which he did not prepare and an autopsy which he did not perform. The City agrees as a consequence the evidence lacked a foundation which, in accord with Advisory Committee Comments to Rule 703, that the facts on which he based his opinion, were "reasonably relied upon by experts in the particular field."

During Dr. Lethco's deposition, timely objection was made by counsel for the City. However, it appears that when the deposition was offered in evidence, counsel for the City did not call to the Trial Court's attention the fact he was continuing to rely upon the objections made when the deposition was taken. This, coupled with counsel's failure to advocate this position during her closing argument persuades us that this objection was waived and may not be a predicate for error because it was never brought specifically to the attention of the Trial Court.

For the foregoing reasons the judgment of the Trial Court is modified to award Mr. Richardson a judgment for his personal injuries in the amount of $20,000 (40 percent of $50,000), and as surviving spouse the sum of $86,800 (40 percent of $217,000). As modified, the judgment is affirmed and the cause remanded for the collection of the judgments and costs below. Costs of appeal are adjudged one-half against the City and one-half against Mr. Richardson.

_____
Houston M Goddard, P.J.

10

CONCUR:

_____
Don T. McMurray, J.


_____
Charles D. Susano, Jr., J.