# IN THE COURT OF APPEALS OF TENNESSEE
## AT MORRISTOWN[1]
### October 14, 2003 Session

## EDDIE W. BELCHER, ET AL. v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission, Eastern Division**
**No. 101040     Robert A. Fellman, Administrative Law Judge**

### FILED NOVEMBER 25, 2003

### No.  E2003-00642-COA-R3-CV

---

This claim against the State of Tennessee arises out of a two-vehicle accident.  Eddie W. Belcher was driving to church with his wife, Sara O. Belcher, when their vehicle struck the rear of a vehicle driven by Eric Wilson .  The Belchers, who sustained severe injuries as a result of this accident, filed a claim against the State, alleging that a dangerous condition existed on the portion of the interstate where the accident occurred and that the section of the interstate was negligently designed and maintained.  The Claims Commission determined that the State was negligent in its design of that stretch of interstate, but held that its negligence was not the proximate cause of the Belchers' injuries.  The Belchers appeal, arguing that the Claims Commission erred in the second of these two determinations.  By way of a separate issue, the State contends that the Belchers' claim is barred by the four-year statute of repose.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and WILLIAM H. INMAN, SR. J., joined.

Wade V. Davies and Tasha C. Blakney, Knoxville, Tennessee, for the appellants, Eddie W. Belcher, deceased, and Sara O. Belcher, deceased, through their executrix and daughter, Beverly J. Ritchie.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and George H. Coffin, Jr., Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

---

[1]This case was heard in Morristown before students from Morristown East High School and Morristown West High School as a part of the Court's C.A.S.E. (**C**ourt of Appeals **A**ffecting **S**tudent **E**ducation) Project.

## I.

On Sunday morning, August 12, 1990, Mr. Belcher was driving to church with his wife. The Belchers were traveling eastbound in the center lane of Interstate 40 through Knoxville. The road conditions were described as good.

Two 18-wheeler trucks slowly passed the Belchers on either side as the three vehicles approached the 17th Street overpass. Meanwhile, Mr. Wilson and the occupants of his vehicle were traveling ahead of the Belchers in the far left-hand lane. Mr. Wilson was lost; on the instructions of one of his passengers, Mr. Wilson slowed his vehicle and attempted to switch lanes in order to exit the interstate. Mr. Wilson then moved into the center lane of the interstate.

The Belchers crested a hill over the 17th Street overpass. Approximately 475 feet from the apex of the hill, the Belchers' vehicle struck the rear of Mr. Wilson's vehicle.

All that Mr. Belcher could recall of the accident was hearing a noise and waking up leaning over the steering wheel with his vehicle in the median of the interstate. Mr. Belcher did not remember ever seeing the Wilson vehicle. In her deposition, Mrs. Belcher recalled the following:

> [A]s we were going along all at once this light-colored car appeared right in front of us and there was not enough time between the time that I saw the car in front of us that I had any time to say anything or do anything before we hit it. . . . The way was open in front of us and we were driving along and then all at once this light-colored car was right in front of us.

The Belchers stated that they were driving the speed limit of 55 mph at the time of the accident.

Mr. Wilson and one of his passengers stated that Mr. Wilson had been driving 55 mph, then slowed to 50 mph to allow a truck to pass him. He then saw a car behind him, but could not get out of its way because it was going approximately 75 or 80 mph. Another passenger in Mr. Wilson's vehicle stated that, as he was looking out the rear window to assist Mr. Wilson in changing lanes, he saw the Belcher vehicle "going real fast" just before the accident occurred.

The parties later stipulated that the difference in speed of the two vehicles at the time of the collision was 45 mph and that the brake light filaments of Mr. Wilson's vehicle indicated that his brake lights "were on at or very near the time of impact."

As a result of the accident, the Belchers sustained serious injuries. Mrs. Belcher's injuries were particularly severe; she suffered a broken neck and pinched spinal column, resulting in paralysis. The police officer who investigated the accident determined that Mr. Wilson did slow his vehicle for traffic, but that his driving did not contribute to the accident. Instead, the officer determined that Mr. Belcher's action in following too closely contributed to the accident.

On August 8, 1991, the Belchers filed a claim for damages against the State with the Tennessee Claims Commission. In their claim, the Belchers alleged that the State negligently designed, approved, and maintained a dangerous and defective roadway and that this condition caused the accident in which the Belchers were injured. Before the claim was heard before the Claims Commission, the Belchers passed away.[2] Their daughter and executrix, Beverly Ritchie, was substituted in their place.

The case was heard on March 28, 2001. At the hearing, the Belchers' expert witness, Don Moore – a civil engineer specializing in traffic operations and transportation and a certified accident reconstructionist – testified that the design of the highway leading up to the accident scene violated two standards of the American Association of State Highway and Transportation Officials ("AASHTO"). First, Moore claimed that the highway did not comply with the minimum stopping sight distance (the distance required for drivers to be able to see what is in front of them, based on the speed limit). Second, Moore testified that the highway was deficient in decision sight distance, which refers to the time a motorist needs to respond to a hazard in the road. Under the AASHTO standards, the minimum stopping sight distance should have been 538 feet and the minimum decision sight distance should have been 673 feet.

On February 4, 2003, the Claims Commission issued its judgment, finding that the Belchers were not entitled to relief. In rendering this judgment, the Claims Commission made the following statements:

> In order for [there] to be a cause of action for negligence, it must be established that the defendant's conduct was the proximate or legal cause. Proximate causation is the ultimate issue in negligence cases. *See **McClenahan v. Cooley**,* 806 S.W.2d 767, 774 (Tenn. 1991).
>
> "There is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." *Id.* at 775.
>
> While [the Belchers] proved that the general area in which the accident took place was not in compliance with AASHTO standards, the proof did not establish that the State's failure to be in conformance with those guidelines was the proximate cause of the accident here.
>
> First, the main fault with the road area at issue is that cars going *up* the hill preceding the accident site have a limited view of cars on the other side of the hill who have already begun their descent.

---

[2]Mr. Belcher died on April 20, 1998, and Mrs. Belcher died on May 26, 1998.

But the accident here did not happen just over the crest of the hill. This accident happened 475 feet, [or] 158 yards, after [Mr. Belcher] had crossed the apex of the hill.

There was conflicting evidence . . . as to the speed of the two cars and lanes in which they were traveling. But it is clear that the accident was caused, not because of a deficiency in sight distance or minimum stopping sight distance, but because Mr. Wilson's car veered suddenly into [the Belchers'] lane while [the Belchers'] car was going too fast and/or the Wilson car had slowed dangerously. The parties stipulated that there was a 45 mph difference in speed between the two cars involved in the accident. If Mr. Belcher was going only the speed limit, then Mr. Wilson had to be going 10 mph on a crowded highway at the time of the accident.

Even if [the Belchers'] car was not speeding (and it appears likely that it was), [Mr. Belcher's] vision of the Wilson car was restricted mostly by trucks, not any road deficiency.

[Mrs.] Belcher's testimony, of the Wilson car darting in front of theirs, describes a collision caused by cars shifting lanes at inappropriate speeds.

There was no testimony by either [of the Belchers] that they could not see the Wilson car in front of them because the hill had obstructed their view.

More importantly, even [the Belchers'] own expert witness, a certified accident reconstructionist, did not testify that the road conditions caused this particular accident. He testified that the road design was inherently deficient, and [the Belchers] argued that it should be deduced from this fact alone that the defect caused the accident. But no such cause was proven.

In fact, it was the State which broached this area of causation during the hearing on cross examination but Mr. Moore still did not testify as to his opinion on the ultimate issue of proximate cause – whether the road conditions caused the accident or the drivers involved.

"The decision of whether a condition of a highway [. . .] is . . . dangerous and hazardous . . . is a factual one, and the court should consider the physical aspects of the roadway, the frequency of accidents at that place in the highway and the testimony of expert

witnesses in arriving at this factual determination." *Sweeney v. State*, 768 S.W.2d 253, [] 255 (Tenn. 1989).

As already pointed out here, there was no expert testimony that the road conditions caused this particular accident. Nor was there testimony as to the frequency of accidents at this particular accident site. There was proof as to two other accidents in the area but these were weather-related.

There was also testimony by a police officer that he went to an accident in the same area and had to call for help because oncoming traffic coming over the hill had little time to react. But [the Belchers'] accident was not caused by the hill blocking their view; it was caused by the negligence of the drivers involved. In any case, even on a flat road, an accident can result in a dangerous situation simply because some drivers are not paying attention to what is in front of them.

If the road was as dangerous as [the Belchers] asked this Judge to deduce, then accidents during good driving conditions, as here, should occur with some frequency. But [the Belchers] presented no proof of other similar accidents under similar conditions.

Even proof that the area had experienced many accidents would only tend to prove that the area was inherently dangerous. But the mere fact that an area is inherently dangerous does not automatically prove that every accident in the area is caused by the conditions of the road. Accidents happen on perfectly safe roads when a driver drives negligently. The odds of an accident increase when there is more than one negligent driver, as appears to be the case here.

Because [the Belchers] did not prove that their injuries were the result of the State's negligence, their claim for damages is **denied**.

(Numbering in original omitted). From this judgment, the Belchers appeal.

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the Claims Commission's factual determinations that we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Our review of questions of law is *de novo* with no

such presumption of correctness attaching to the Claims Commission's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

### III.

The Belchers' claim is premised upon Tenn. Code Ann. § 9-8-307 (Supp. 2003), which states, in pertinent part, as follows:

> (a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," . . ., falling within one (1) or more of the following categories:
>
> * * *
>
> (I) Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, . . . , highways, . . . , and negligence in maintenance of highways, . . . , designated by the department of transportation as being on the state system of highways or the state system of interstate highways;
>
> (J) Dangerous conditions on state maintained highways. The claimant under this subsection must establish the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures;
>
> * * *

### IV.

Before reaching the Belchers' issue, we must first address our attention to the State's position that the Belchers' claim is barred by the four-year statute of repose, codified at Tenn. Code Ann. § 28-3-202 (2000). That statute provides as follows:

> All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of,

-6-

> or land surveying in connection with, such an improvement within
> four (4) years after substantial completion of such an improvement.

The State contends that, since the Belchers brought their claim under, *inter alia*, Tenn. Code Ann. § 9-8-307(a)(1)(I), which addresses the negligent planning of highways, their claim is subject to this statute of repose. The stretch of highway at issue in the instant case was first constructed in 1954 and improved in 1980. Because, so the argument goes, the Belchers filed their claim on August 8, 1991, it is outside the four-year statute of repose and should be barred. We disagree with this position.

Tenn. Code Ann. § 28-3-205(a) (2000) provides that the statute of repose may not be used as a defense by anyone who possesses or controls "as owner, tenant, or otherwise" the deficient property that allegedly caused the injury or death that formed the basis for the legal action. Our Supreme Court has addressed this statute as follows:

> It seems to us that there is a substantial difference between landowners and tenants, who are excepted from the provisions of the Tennessee statutes, [Tenn. Code Ann.] § 28-3-205(a), and those engaged in the designing and erection of a building. The duty of the landowner or tenant in possession to keep premises reasonably safe for third persons is a continuing one, whereas the work of the architect, design engineer and contractor ordinarily ceases with the completion of the building. Yet without limitations such as those provided in the subject statutes their exposure to tort claims could extend into the very distant future.

***Harmon v. Angus R. Jessup Assocs., Inc.***, 619 S.W.2d 522, 524 (Tenn. 1981). The intent of the legislature in enacting Tenn. Code Ann. § 28-3-202 was to "insulate contractors, architects, engineers, and others from liability for defective construction or design of improvements to realty" when the injury or death occurs more than four years after the improvement is substantially completed. ***Chrisman v. Hill Home Dev., Inc.***, 978 S.W.2d 535, 540 (Tenn. 1998) (citing ***Watts v. Putnam County***, 525 S.W.2d 488, 492 (Tenn. 1975)).

It is clear that the four-year statute of repose was not intended to be applicable to the owner of the subject property, but rather to the *designer* of the property. As the State has "actual possession or the control" of the highway at issue, *see* Tenn. Code Ann. § 28-3-205(a), it cannot assert the statute of repose as a defense to the Belchers' claim. Therefore, we find this issue to be without merit.

V.

The Belchers argue that the Claims Commission erred in determining that they failed to prove that the negligence of the State was the proximate cause of their injuries. We disagree.

In order to prevail on a negligence claim, a claimant must prove five essential elements: (1) that the defendant owed a duty of care to the claimant; (2) that the defendant breached that duty of care; (3) that the breach of care resulted in an injury to the claimant; (4) that the breach of care was the cause in fact of the claimant's injury; and (5) that the breach of care was the *proximate or legal cause* of the claimant's injury. **McClenahan**, 806 S.W.2d at 774 (emphasis added). Therefore, it is not enough to prove the existence of a dangerous condition on the highway, pursuant to Tenn. Code Ann. § 9-8-307(a)(1)(J), or to prove that the State negligently approved, constructed, and maintained the highway, pursuant to Tenn. Code Ann. § 9-8-307(a)(1)(I). The Belchers were also required to prove that those conditions were the cause in fact and the proximate cause of the accident.

After reviewing the record, we cannot say that the evidence preponderates against the Claims Commission's determination that the Belchers did not prove that the deficiency in the design of the highway caused their injuries. While the Belchers take issue with the Claims Commission's findings with respect to the speed of the Belchers' vehicle and the exact location of the accident, we find that the evidence does not preponderate against those findings. The Claims Commission chose between competing and conflicting testimony. The trier of fact is in the best position to make these choices. *See* **Massengale v. Massengale**, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); **Bowman v. Bowman**, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991). Such determinations are entitled to great weight on appeal. **Bowman**, 836 S.W.2d at 566.

In short, there is a dearth of evidence in the record to support the Belchers' contention that the defective highway *caused* the accident and, consequently, their injuries. Indeed, the Belchers' own expert witness failed to testify that the design of the highway caused the accident. Because of this lack of evidence, we are loath to find that the evidence preponderates against the trial court's critical determination that this negligently-designed stretch of Interstate 40 was not the cause of the Belchers' accident.

VI.

The judgment of the Claims Commission is affirmed. This case is remanded for the collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellants, Eddie W. Belcher, deceased, and Sara O. Belcher, deceased, through their executrix and daughter, Beverly J. Ritchie.

_____<br>CHARLES D. SUSANO, JR., JUDGE