# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 24, 2011 Session

## REYNALDO COLLAZO ET AL. V. JOE HAAS D/B/A HAAS CONSTRUCTION ET AL.

### Appeal from the Circuit Court for Davidson County
No. 08C2530     Barbara N. Haynes, Judge

### No. M2011-00775-COA-R3-CV - Filed December 15, 2011

This is an action to recover uninsured motorist benefits following a motor vehicle collision involving the plaintiff and another vehicle. The driver of the defendant vehicle left the scene and has not been identified. The owner of the vehicle was subsequently identified, but denied knowing the identity of the driver and claimed no one had permission to operate the vehicle at the time of the accident. The named defendants in this action are the owner of the vehicle and John Doe, the unknown driver. Plaintiffs' uninsured motorist insurance carrier, Nationwide Insurance Co., is an unnamed defendant. The defendant owner has liability insurance coverage through State Farm Insurance Co. The plaintiffs settled all claims against the defendant-owner and State Farm for $90,000, $10,000 less than the uninsured motorist limits with Nationwide. Thereafter, the plaintiffs continued to pursue their claims against Nationwide for uninsured motorist benefits, insisting the settlement with the owner of the vehicle did not bar their claims against the uninsured John Doe driver. Upon motion for summary judgment by Nationwide, the trial court found that because the owner of the vehicle had $100,000 of liability insurance, there was not an "uninsured motor vehicle." Based on this finding, the trial court summarily dismissed the plaintiffs' uninsured motorist claim against Nationwide. We reverse and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Aldo J. Stolte and Thomas R. Lewis, Nashville, Tennessee, for the appellants, Reynaldo Collazo and Sharon Collazo.

Thomas J. Smith, Courtney E. Smith, and Spicer Rudstrom, Nashville, Tennessee, for the

appellees, John Doe and Nationwide Insurance Co.

**OPINION**

Plaintiff Reynaldo Collazo was in his vehicle on Haywood Lane near the intersection with Nolensville Road around 5:00 p.m. on Friday, August 3, 2007, when his vehicle was struck from behind by a truck that was hauling a trailer. Although the driver of the truck got out of the truck and approached Mr. Collazo's vehicle, he did not wait for the police to arrive; instead, the driver fled the scene of the accident without identifying himself. Before the driver left the scene, Mr. Collazo observed that he was an adult, Hispanic male, and recorded the license plate number of the truck. It was later determined that the truck was registered to Joe Kenneth Haas d/b/a Haas Construction Company, LLC, and AWS, LLC (collectively, "Haas"). Mr. Haas is the managing member of both LLCs.

Mr. Haas was contacted by the police two weeks after the accident. He stated that he was not aware of any of his trucks being involved in an accident, but he conceded that the license plate number provided by Mr. Collazo matched a truck owned by and registered to Haas Construction. Based on the date of the accident, Mr. Haas determined that during the week prior to and after the accident, the truck was being used on a concrete job Haas had been subcontracted to perform as part of a larger condominium construction project in downtown Nashville.

Mr. Haas then contacted Jim Seigler, Haas's foreman for that particular job, who stated that the truck was left at the downtown job site on the Friday afternoon of the accident, and when Mr. Seigler returned to the job site the following Monday morning, the truck was in the same location, with no obvious damage, and with nothing missing. Mr. Haas also inspected the truck and confirmed there was nothing amiss.

There were four Haas employees working on the downtown condominium project: a young Hispanic male known as "Fonzie," two other laborers, and Mr. Seigler. In addition to Haas, there were several other subcontractors working on the project, plus the general contractor, for a total of more than 300 construction workers. The construction site was enclosed by a chain link fence, which was frequently locked, though not always. The superintendent for the general contractor controlled the flow of people, vehicles and resources into and out of the construction site. Many of the subcontractors worked on weekends, and, according to Mr. Seigler, the general contractor required him to leave the Haas truck unlocked with the keys under one of the floormats, so that the truck could be moved in the event the truck was blocking another vehicle from entering or leaving the site at a time when Mr. Seigler was not available to move the truck himself. Mr. Haas explained

that the truck was a heavy industrial truck used to transport tools and materials and was typically left on a construction site overnight and on weekends until the job was completed.

Mr. Seigler also stated that he left the job site at about 3:30 p.m. on the day of the accident and that he was the last Haas employee to leave. He further stated that no Haas employees were required to work over the weekend on the downtown condominium construction job, and as far as Mr. Seigler knew, no Haas employee returned to the job site until 7:30 a.m. Monday morning.

PROCEDURAL HISTORY

Mr. Collazo and his wife, Sharon Collazo, ("Plaintiffs"), filed this action on August 4, 2008. The defendants named in the complaint were Joe Haas, d/b/a Haas Construction, and John Doe (collectively, "Defendants"). Nationwide Insurance Co. ("Nationwide"), which provided uninsured motorist coverage for Plaintiffs under their automobile liability insurance policy, was served with process and included in the action as an unnamed defendant. In their complaint, Plaintiffs alleged that Mr. Collazo's injuries were caused by the negligent driving of John Doe for which John Doe is liable. Plaintiffs also asserted that Haas was vicariously liable for John Doe's negligence as his employer under the principle of respondeat superior, and for being negligent in entrusting the vehicle to John Doe. Alternatively, they alleged that Haas was negligent in leaving the keys in the vehicle thus negligently making it available to John Doe. Mr. Collazo sought $325,000 in compensatory damages for his medical bills, the damage to his vehicle, lost income, and pain and suffering. Ms. Collazo sought $75,000 in compensatory damages for service and support of her husband and loss of consortium.[1]

Haas, who was insured by State Farm Insurance Co. ("State Farm"), filed an answer denying any liability for Plaintiffs' injuries.[2] Haas denied that its vehicle was involved in the accident, denied that John Doe was "about the business" of Haas when the accident occurred, and denied being at fault for leaving the keys in the vehicle after work. As an affirmative defense, Haas alleged that the fault of all parties, including Plaintiffs, John Doe, and those not currently named as parties but who might be at fault, must be compared. Haas also alleged that the general contractor on the construction project, Solomon Brothers, was a possible tortfeasor, due to the fact that the superintendent for the general contractor required that Haas leave the keys in the vehicle any time it was being stored on site.

---

[1]Plaintiffs also alleged that Haas was grossly negligent for being unable to identify who was driving the truck and they sought $1,000,000 in punitive damages on their gross negligence claim.

[2]In the answer, Haas stated that the truck was not owned by Joe Haas individually, instead it was owned by Joe Haas Construction Company and AWS, LLC, of which Mr. Joe Haas is a member.

Nationwide filed an answer pursuant to Tennessee Code Annotated § 56-7-1201, expressly reserving its right to elect to defend in its own name or in the name of the allegedly uninsured/under-insured defendant John Doe. It denied that any of the defendants were uninsured or under-insured motorists in accordance with the uninsured motorist provisions ("UM provisions") of Plaintiffs' insurance policy. Nationwide also affirmatively asserted that it was not liable as a UM insurer based upon the facts of this case, because Haas's truck was insured by State Farm with limits equal to that of Plaintiffs' UM coverage, $100,000.

The parties participated in mediation on October 14, 2010. As a result of the mediation, Plaintiffs settled their claims against Haas for $90,000, which was paid by State Farm and which was $10,000 less than Haas's policy limit with State Farm. Plaintiffs signed a Release of All Claims and Indemnification against Haas and State Farm on October 25, 2010, and shortly thereafter, the trial court entered an Agreed Order of Compromise, Settlement and Dismissal with Prejudice ("Agreed Order") as to all claims against Haas and State Farm.[3] Neither the Release nor the Agreed Order referenced John Doe or Nationwide. Furthermore, at no time did Haas admit any degree of fault for Plaintiffs' injuries.

Nationwide filed a motion for summary judgment on January 18, 2011, asserting that Plaintiffs were no longer entitled to pursue a UM claim because, regardless of the identity of the driver, the vehicle that struck Mr. Collazo was an insured motor vehicle due to Haas's policy with State Farm. Further, Nationwide asserted that Plaintiffs did not have an under-insured claim because Haas's policy with State Farm provided the same limits as Plaintiffs' policy with Nationwide, $100,000. Nationwide also asserted that Plaintiffs violated express provisions of their insurance policy by releasing Haas, a potentially liable party, without Nationwide's written permission.

Following a hearing on the motion, the trial court concluded that:

1.    The motor vehicle that was involved in the accident with the Plaintiff was an insured motor vehicle for the purposes of determining whether or not the Plaintiff had an uninsured motorist claim; and

2.    In the absence of the involvement of an uninsured motor vehicle, the

---

[3]As Plaintiffs' UM coverage provider, Nationwide participated in the mediation on behalf of John Doe, and reviewed the Agreed Order before it was entered in the trial court without objecting to the fact that John Doe was not released. When the trial court entered the Agreed Order, Plaintiffs indicated they intended to pursue their claims against John Doe under their UM coverage with Nationwide. Nationwide, however, took the position that no UM claim survived because the settlement revealed that Haas's truck was insured by State Farm.

Plaintiff has no uninsured motor vehicle claim against Nationwide Insurance Company available under the provisions of T.C.A. § 56-7-1201, et seq.

Based on these findings, the trial court granted Nationwide's Motion for Summary Judgment in an order entered March 6, 2011. Plaintiffs filed a timely appeal.

**ANALYSIS**

The trial court summarily dismissed Plaintiffs' UM claims, holding that as a matter of law, Plaintiffs did not have a viable claim for UM benefits because Haas has the same amount of liability insurance as is provided by Nationwide. We have determined this holding was in error because the allocation of comparative fault between Haas and John Doe has not been determined. As we explain below, Haas's liability insurance does not preclude the UM claim unless Haas is found to be "legally liable" for no less than $100,000 of Plaintiffs' damages *or* it is established that John Doe is insured for no less than $10,000 and is found to be "legally liable" for no less than that amount, for an aggregate of $100,000, being the policy limits under Plaintiffs' UM coverage with Nationwide.[4]

I.

This dispute involves separate but overlapping issues of comparative fault, liability insurance coverage, and uninsured motor vehicle coverage. As this Court has stated, "[t]echnically, an insured's action against his or her own uninsured motorist coverage carrier is a breach of contract action. Nevertheless, UM insurance recovery cases are typically a hybrid that also involve tort law principles." *Gov't Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *34 (Tenn. Ct. App. June 29, 2007).

In order to resolve the issues presented, we must conduct a legal analysis of the statutes covering uninsured motor vehicle coverage, Tennessee Code Annotated §§ 56-7-1201 et seq. ("UM Statutes") and the contract of insurance, which involve questions of law that we review pursuant to the de novo standard. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Guiliano v. Cleo, Inc.* 995 S.W.2d 88, 95 (Tenn. 1999). The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *see also McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Similarly, we review contractual issues de novo and reach our own independent conclusions regarding their meaning and legal import. *Guiliano*, 995 S.W.2d at 95; *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

---

[4]This assumes that Plaintiffs are awarded damages of at least $100,000.

II.

The Tennessee General Assembly has mandated that every automobile liability insurance policy "covering liability arising out of the ownership . . . or use of any motor vehicle . . . shall include uninsured motorist coverage . . . for the protection of persons insured under the policy who are *legally entitled to recover* compensatory damages from owners or operators of *uninsured motor vehicles* because of bodily injury, . . ." Tenn. Code Ann. § 56-7-1201(a).

For purposes of uninsured motor vehicle coverage, an "uninsured motor vehicle" is defined as:

> a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies . . . applicable to the bodily injury, death or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made.

Tenn. Code Ann. § 56-7-1202(a)(1).

When read together, these two statutes require that where an insured has purchased UM coverage, the UM carrier must pay benefits in cases where: (1) a claimant is *legally entitled to recover damages from the uninsured motorist* and, (2) the total amount of liability coverage *available to the insured* is less than the insured's uninsured motorist coverage limits.[5]

To be "legally entitled" to recover UM benefits, a claimant must prove damages *and fault on the part of the uninsured motorist. See* Phillip A. Fleissner & Paul Campbell III, *Tennessee Automobile Liability Ins.*, § 17:1 Uninsured Motorist Litigation Procedures, Existence and Amount of Legal Liability (2010);[6] *see also* Alan I. Widiss, *Uninsured and*

---

[5]The law is well-established that UM Statutes, "as a matter of law, become provisions of all automobile insurance policies issued for delivery in Tennessee." *Fleming v. Yi*, 982 S.W.2d 868, 870 (Tenn. Ct. App. 1998). We note that UM providers are free to offer UM coverage greater than that which is required by the UM Statutes. However, for the purposes of this opinion and the question of whether summary judgment is appropriate, this issue does not affect our analysis.

[6]Fleissner and Campbell go on to write, "[s]uch coverage, therefore, is not like first-party coverage for collision, comprehensive, medical payments, or 'no fault' (medical and wage loss) benefits, which are
(continued...)

*Underinsured Motorist Insurance*, § 7.2 (2 rev. ed. 1999) ("The uninsured motorist coverage is intended by insurers to apply only to accidents where fault is attributable, and it is not available to a claimant in the absence of negligence.").

The liability of a UM carrier is limited to "*payment for damages caused by the uninsured . . . motorist* in the ownership, maintenance, or use of the vehicle," up to the UM claimant's policy limit. *Sherer v. Linginfelter*, 29 S.W.3d 451, 454 (Tenn. 2000)(emphasis added); Fleissner & Campbell, *supra* (citing Tenn. Code Ann. 56-7-1201(a)) ("Uninsured motorist coverage indemnifies only against losses and damages for which an uninsured or under-insured motorist is legally liable. Thus, the obligation to pay insurance benefits is dependent upon a determination of legal liability and damages."); *see also generally Murray v. Tenn. Farmers Assurance Co.*, No. M2008-00115-COA-R3-CV, 2008 WL 3452410 (Tenn. Ct. App. Aug. 12, 2008). If a claimant is unable to establish *fault on the part of the uninsured motorist*, in addition to damages and causation, the UM provider is not obligated to provide benefits.

The second requirement under the UM statutes involves the question of whether the motorist allegedly at fault (here, John Doe) is uninsured or under-insured. Whether one is uninsured is generally a straightforward issue. Whether one is under-insured is dependent upon the extent of damages the claimant is legally entitled to recover, the available insurance attributable to the party or parties at fault, and the allocation of fault. A motorist is under-insured if, i.e., "the sum of the limits of liability *available to the insured under all valid and collectible insurance policies* . . . is less than the applicable limits" of the insured's UM coverage. Tenn. Code Ann. § 56-7-1202(a)(1) (emphasis added).

Where there is more than one alleged tortfeasor and the allocation of fault is at issue, especially when one tortfeasor is presumed to be uninsured, the viability of a UM claim must be examined in the context of Tennessee's system of modified comparative fault, as adopted in *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992). The purpose of comparative fault "is to link one's liability to his or her degree of fault in causing a plaintiff's damages." *McNabb v. Highways*, 98 S.W.3d 649, 652 (Tenn. 2003). Accordingly, where there are multiple tortfeasors, each is liable only for damages representing the percentage or amount of their respective fault. *McIntyre v. Ballentine*, 833 S.W.2d 52, 56-58 (Tenn. 1992). Therefore, the liability insurer for each respective tortfeasor is obligated to indemnify its insured for injury or damage based upon the insured tortfeasor's degree of fault and no more. *See* Fleissner & Campbell, *supra*, § 5:3 Bodily Injury and Property Damage, Limits of Liability.

---

[6](...continued)
payable regardless of a determination of fault." Fleissner & Campbell, *supra*.

III.

Nationwide presents several arguments to support the trial court's decision to summarily dismiss the UM claim. It asserts that Haas's truck is not an uninsured vehicle, a fact that bars a UM claim. It asserts that it presented a prima facie case that John Doe was a permissive user of Haas's truck, which proves that John Doe is not uninsured. It also asserts that UM coverage is no longer available to Plaintiffs because they settled with Haas without Nationwide's written consent, thereby failing to protect its subrogation interests. Nationwide also asserts that Plaintiffs will be unjustly enriched by a double recovery if the UM claim is not dismissed. We will discuss each in turn.

A.

The truck driven by John Doe was insured under Haas's automobile liability insurance policy up to $100,000 for damages caused by Haas's negligence or that of a permissive user. Thus, if Haas is found to be 100% at fault for Plaintiffs' damages, Haas's insurance policy bars Plaintiffs' UM claim against Nationwide. However, if Haas is not at fault and John Doe is not insured, the fact that Haas has a $100,000 liability policy on the truck does not bar the UM claim.

At this stage in the proceedings, we are in no position to comparatively allocate fault between John Doe and Haas. The finder of fact may determine that Haas is not at fault, or is only minimally at fault for Plaintiffs' injuries. However, the finder of fact may find Haas at fault for a significant portion of Plaintiffs' damages by leaving the truck unlocked and unattended, with the keys inside.[7] This was the subject of the Court's analysis in *McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991). In that case, the defendant, who owned the vehicle, drove it to a bank and left the keys in the ignition when he went into the bank. *Id.* at 769. While the defendant was inside the bank, a thief stole the car and drove away. *Id.* A high speed police chase ensued and, after running a red light, the thief crashed into another car, killing Mr. McClenahan's wife and two children and injuring another child. *Id.* The trial court granted the defendant car owner's motion for judgment on the pleadings. *Id.* at 770. The Supreme Court reversed, holding that a jury should be allowed to determine the issues of proximate cause and intervening cause. *Id.* As the Court explained: "Leaving a key in the ignition of an unattended automobile in an area where the public has access, be it public or private property, could be found by a reasonable jury to be negligent, whether or not a

---

[7]This is assuming, for the sake of this portion of the analysis, that Haas is not liable as John Doe's employer, or for negligently entrusting the truck. Those questions relate to whether John Doe is covered by Haas's liability insurance policy, which we also address later in the opinion.

-8-

prohibitory statute is involved."[8] *Id.* at 776. As for the issue of proximate cause, the Court set out a three-pronged test:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* at 775.

The reasoning in *McClenahan* was recently applied by this court in *Newman v. Jarrell*, No. M2010–00586–COA–R3–CV, 2010 WL 4968079 (Tenn. Ct. App. Dec. 7, 2010). In *Newman*, we reversed the trial court's summary dismissal of the plaintiff's personal injury claims against the owner of a vehicle that had been stolen. *Id.* at *9. We concluded that material facts were in dispute, for example, the location of the keys left in the car by the owner, whether they were hidden from view, whether the car was locked or the windows rolled down, whether the car was parked in the driveway or on the street in front of the house, and whether it was foreseeable that the car may be stolen because the area was considered a high crime area. *Id.*

If John Doe is not a permissive user, there are disputed questions of fact concerning whether Haas is legally liable for Plaintiffs' injuries and, if so, to what extent; thus, the extent to which Haas's liability insurance is available to Plaintiffs cannot be determined at this time. Because we do not know the extent, if any, of Haas's "legal liability" to Plaintiffs, the mere fact that Haas maintains $100,000 liability insurance on the truck does not preclude Plaintiffs' claim for UM benefits. If, however, John Doe *is* a permissive user and thus also covered by Haas's liability insurance policy with State Farm,[9] the issue of comparative fault is moot. This is because if John Doe is a permissive user, there is $100,000 in liability coverage "available" to Plaintiffs from Haas's policy. Under these circumstances, Plaintiffs would have no UM claim. However, because these material facts are in dispute, summary judgment is not appropriate. *See* Tenn. R. Civ. P. 56.04.

---

[8]The prohibitive statute referenced in *McClenahan* is Tennessee Code Annotated § 55–8–162(a), which states: "No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway." *Id* . at 772.

[9]Or, if John Doe is identified, located, and found to have his own liability insurance policy with sufficient coverage limits.

B.

Nationwide asserts that the record establishes that John Doe is covered as a "permissive user" of Haas's truck and thus insured by State Farm. We disagree because the record reveals that this material fact is very much in dispute.

Nationwide's position is based on Tennessee Code Annotated §§ 55-10-311(a) & -312, which provide that proof of ownership or registration of a vehicle constitutes prima facie evidence that the vehicle was being used by the owner or with the consent of the owner, for the owner's benefit and within the course and scope of employment. Plaintiffs, however, put this factual assertion in dispute by presenting testimony from Mr. Haas and Mr. Seigler, who both testified that no Haas employee other than themselves, had permission to drive the trucks, and that the accident occurred after work hours in an area of Nashville where Haas had no ongoing jobs and no suppliers. Further, the record reveals that Haas did not learn of the accident until several days later, and that no tools or materials were missing from inside the truck. Nationwide's assertion that John Doe was a permissive user of Haas is further undermined by Tennessee Code Annotated § 56-7-1201(g), which provides that, "[f]ailure of the motorist from whom the insured is legally entitled to recover damages to file the appropriate forms required by the department of safety . . . within 90 days of the accident date shall create a rebuttable presumption that the motorist was uninsured." No one filed the appropriate forms; thus, a rebuttable presumption exists that John Doe is uninsured.

Although Nationwide presented "a prima facie case" based on Tennessee Code Annotated §§ 55-10-311(a) & -312, Plaintiffs presented countervailing evidence that created a dispute of fact and, pursuant to Tennessee Code Annotated § 56-7-1201(g), Plaintiffs have the benefit of the rebuttable presumption that John Doe is uninsured. As our Supreme Court noted in *Warren v. Estate of Kirk*, 954 S.W.2d 722, 724 (Tenn. 1997), "[s]ummary judgment is not ordinarily the proper procedure for determining whether a prima facie case has or has not been overcome by countervailing evidence."

C.

Nationwide also asserts that, even if John Doe is uninsured, Plaintiffs forfeited any potential UM benefits by failing to obtain Nationwide's written consent before settling with Haas and by failing to preserve Nationwide's subrogation rights, a violation of the provisions of the UM Coverage Agreement. We respectfully disagree.

As the Nationwide policy states, the UM claimant, Plaintiffs, must "preserve and protect [Nationwide's] right to subrogate against any *liable* party." (Emphasis added). The policy also expressly provides that UM coverage is excluded "if the insured settles without our written consent with a *liable* party." (Emphasis added). The fallacy with Nationwide's argument, at least at this stage of the proceedings, is that Haas may not be a liable party; this

is because liability of the alleged tortfeasors has not been determined. The fact that Haas settled with Plaintiffs and obtained a full release does not change this as Haas did not admit any degree of liability.

Subrogation rights only pertain to those who are legally liable; thus, if Haas is not at fault and therefore not liable, Nationwide would have no right of subrogation against Haas or State Farm. Accordingly, Plaintiffs' release of Haas and State Farm without Nationwide's written consent may or may not constitute a violation of their UM coverage Agreement; therefore, it would not be appropriate to grant summary judgment on this ground.[10]

D.

As the result of a voluntary settlement with Haas, Plaintiffs recovered $90,000 as partial compensation for the damages alleged in this case. Even though Haas did not admit fault, the settlement with Haas is significant in that, as Tennessee Code Annotated § 56-7-1206(i) provides, the UM carrier is entitled to credit "for the total amount of damages collected by the insured *from all parties alleged to be liable* for the bodily injury or death of the insured whether obtained by settlement or judgment and whether characterized as compensatory or punitive." (emphasis added). Thus, Nationwide is entitled to a credit of $90,000 against any liability it may have, if any, under the UM provisions.

It is also important to note that the credit to which Nationwide is entitled is not affected by principles of comparative fault. *See Poper v. Rollins*, 90 S.W.3d 682, 686-87 (Tenn. 2002); *see also Terry v. Aetna Cas. & Sur. Co.*, 510 S.W.2d 509, 513 (Tenn. 1974) (Discussing the difference between a "limited coverage" jurisdiction, in which plaintiffs are only able to collect up to a statutory minimum notwithstanding their damages, versus a "broad coverage" jurisdiction, in which plaintiffs are able to recover up to the policy limits so long as they do no exceed actual damages; and concluding Tennessee is a "limited coverage" jurisdiction). Thus, regardless of the allocation of fault between Haas and John Doe, Nationwide is entitled to a $90,000 credit; thus, leaving its exposure under the $100,000 UM policy at $10,000.

---

[10]There are also disputed facts concerning whether Nationwide waived the written consent requirement, where Nationwide participated in the mediation and reviewed the Agreed Order of Settlement before it was submitted to the trial court for entry without objecting. *See Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 820, 821 n.4 (Tenn. 2003).

### IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings in accordance with this opinion, with costs of appeal assessed against the Appellee, Nationwide Insurance Company.

_____
FRANK G. CLEMENT, JR., JUDGE