IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 7, 2019 Session

## TENNESSEE FUNDING, LLC v. WILLIAM H. WORLEY

**Appeal from the Chancery Court for Marion County**
No. 7927    Jeffrey F. Stewart, Judge

———————————————————

**No. M2018-01099-COA-R3-CV**

———————————————————

Two parties claim the authority to exercise the declarant's rights under a declaration of restrictive covenants for a residential subdivision. The original declarant, the developer of the subdivision, granted a security interest in all personal property associated with the subdivision, including "contract rights" and general intangibles, to the bank that financed the subdivision. After the developer defaulted, the bank conducted a public sale of the personalty securing its debt and was the highest bidder at the sale. A few months later, the developer fell into receivership, and the receiver sold the declarant's rights under the declaration to a lot owner "free and clear of all liens and liabilities." The bank filed this action seeking a declaratory judgment regarding entitlement to the declarant's rights and damages. The lot owner moved for judgment on the pleadings. The lot owner argued that the bank could not prove a superior claim because it had consented to and subordinated its security interest to the declaration. The bank moved for partial summary judgment on its request for a declaratory judgment. The trial court denied the motion for judgment on the pleadings and granted partial summary judgment to the bank. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

John P. Konvalinka and Katherine H. Lentz, Chattanooga, Tennessee, for the appellant, William H. Worley.

Sam J. McAllester III, David M. Anthony, and William J. Haynes III, Nashville, Tennessee, and Thomas K. Austin, Dunlap, Tennessee, for the appellee, Tennessee Funding, LLC.

# OPINION

## I.

### A.

In 2006, American Fidelity Bank[1] agreed to loan Nickajack Shores Holding, LLC $15,500,000 to purchase and develop 578.181 acres in Marion County. Nickajack planned a residential subdivision on the property to be known as the Rarity Club at Lake Nickajack. In conjunction with the loan, Nickajack signed a promissory note in favor of the Bank; a Construction Loan Agreement; and a Construction Deed of Trust, Assignment of Rents, and Security Agreement and Fixture Filing.

In the deed of trust, Nickajack conveyed all of its interest in the real property to the Bank as security for the loan. In both the construction loan agreement and the deed of trust, Nickajack also granted the Bank a security interest in personal property of any kind or nature associated with the Rarity Club development, including after-acquired property. The documents described the Bank's collateral as, among other things, "all . . . contract rights, . . . derived from and relating to the operation of the Real Estate Security" and "all contract rights and general intangibles with regard to construction work to be performed on the Property, and all architectural and engineering plans and specifications relating thereto, whether now owned or hereafter acquired" and all "accounts, contract rights, . . . , intangibles and rights to income with regard to the Property, the improvements thereon and the Equipment, now owned or hereafter acquired . . . , including all contract rights and general intangibles with regard to the operation of the project to be constructed on the Property."

The Bank recorded the deed of trust with the register's office for Marion County. The Bank also recorded with the register's office and filed with the Tennessee Secretary of State a financing statement describing the personal property subject to its security interest.

A few months later, Nickajack created and recorded a Declaration of Covenants, Restrictions and Easements for the Rarity Club at Lake Nickajack. The Declaration imposed "mutually beneficial restrictions" on the property and established a "procedure for the overall development, administration, maintenance and preservation of the Properties." The Declaration provided that the easements, restrictions, covenants, and

---

[1] American Fidelity Bank later changed its name to GreenBank and then merged with Capital Bank Corporation. Capital Bank Corporation filed the initial complaint in this matter. While this appeal was pending, Capital Bank Corporation assigned all of its rights, interests, and claims in this matter to Tennessee Funding, LLC, and this Court substituted Tennessee Funding as the appellee. For simplicity, we will refer to the secured party as the Bank.

conditions contained therein would be binding on all future purchasers. It also contemplated the creation of the Rarity Club Community Association "to own, operate and maintain Common Area[s] and to administer and enforce the provisions of th[e] Declaration, the By-Laws, and the Design Guidelines." Under the Declaration, every lot owner would automatically become a member of the association. Nickajack, as the initial "declarant," retained control over the development and governance of the subdivision during the development period and had exclusive authority to amend the Declaration.[2]

In a one-paragraph Mortgagee Consent, the Bank consented to the terms of the Declaration and "subordinate[d] the lien of the Deed of Trust and the lien of related collateral documents executed and/or filed in connection with the Deed of Trust to the lien of the Declaration." A few months later, the Bank also recorded an amended deed of trust in which the Bank agreed that "the Declaration shall survive a foreclosure of the Deed of Trust."

Before the Rarity Club development could be completed, Nickajack defaulted under the promissory note. So the Bank foreclosed on the real property and disposed of the personal property collateral by public sale. On August 19, 2009, the sales took place. The Bank submitted the highest bid, a credit bid of $15,805,705.93 for both the real and the personal property.

A few days after the sales, the trustee under the deed of trust signed a substitute trustee's deed conveying the real property to the Bank. The Bank memorialized its acquisition of the personal property by a quitclaim bill of sale. The quitclaim bill of sale assigned, transferred, or conveyed to the Bank all of Nickajack's "legal and beneficial right, title and interest" in the personal property described in an attached exhibit. The property assigned to the Bank included "personal property of any kind or nature" and "all contract rights and general intangibles" with regard to construction work and architectural and engineering plans for the property, and other "contract rights [and] intangibles" with regard to the property and the improvements, "including all contract rights and general intangibles with regard to the operation of the project."

---

[2] The Development Period was defined as

The period of time during which the Declarant owns any property which is subject to this Declaration, any Additional Property, or any Private Amenity, or has the unilateral right to subject Additional Property to this Declaration pursuant to Section 7.1. The Declarant may, but shall not be obligated to, unilaterally relinquish its rights under this Declaration and terminate the Development Period by recording a written instrument setting forth such termination in the Public Records.

B.

William Worley and his wife, Rebecca, own two lots in the Rarity Club development. In early 2009, the Worleys and Bill Worley Construction Co., Inc. sued Nickajack and related parties in Marion County Circuit Court seeking compensatory and punitive damages for breach of contract and various torts. The Worleys eventually obtained a judgment against the Nickajack defendants.

While the Worleys' case was pending, a receivership action was filed against Nickajack and related entities in the United States District Court for the Eastern District of Tennessee. As part of the receivership action, the receiver offered for sale various assets of the Nickajack defendants including Nickajack's rights in the Declaration governing the Rarity Club.

On December 30, 2015, the receiver recorded an amendment to the Declaration, assigning the declarant's rights for the Rarity Club to Mr. Worley. The amendment also amended the definition of "declarant" in the Declaration and the bylaws of the Rarity Club Community Association to substitute "William H. Worley" for "Nickajack Shores Holdings, LLC." Later, Mr. Worley recorded other amendments to the Declaration.

C.

The Bank filed a complaint for declaratory relief and damages against Mr. Worley in the Chancery Court for Marion County, Tennessee. The complaint asked the court to declare that the Bank "has the superior and exclusive claim to the Declarant Rights" and "[t]he claim of Worley to the Declarant Rights is invalid and ineffective." The Bank also sought damages for lost profits, costs, and expenses incurred as a result of Mr. Worley's exercise of the declarant's rights.

After filing an answer, Mr. Worley moved for judgment on the pleadings. Mr. Worley argued that the Mortgagee Consent, under which the Bank agreed to subordinate its interest, undermined the Bank's claim of a superior interest. The Bank responded with a motion for summary judgment on its claims for declaratory relief supported by an affidavit from Roger Denny, a bank officer, and a statement of undisputed material facts. Mr. Worley agreed that most of the underlying facts were undisputed, but maintained that summary judgment in favor of the Bank was inappropriate based on the subordination language in the Mortgagee Consent.

The trial court denied Mr. Worley's motion and granted partial summary judgment to the Bank. The court concluded that "the Bank owns the Borrower's rights as Declarant and therefore owns the Declarant Rights under the Declaration as a result of the UCC Sale and the resulting Quitclaim Bill of Sale dated August 26, 2009." Based on the undisputed facts, the court ruled that the Bank was entitled to declaratory relief as a

4

matter of law. So the court declared the assignment and the subsequent amendments to the Declaration "invalid, ineffective, and void[]." The court certified its order as final under Tennessee Rule of Civil Procedure 54.02.

## II.

### A.

On appeal, Mr. Worley first argues that the trial court erred in denying his motion for judgment on the pleadings. *See* Tenn. R. Civ. P. 12.03. A motion for judgment on the pleadings tests the legal sufficiency of the complaint. *Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 275 (Tenn. 2015). In our review, we accept as true the factual allegations of the party opposing the motion and draw all reasonable inferences in that party's favor. *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991). We then decide whether the moving party is clearly entitled to judgment as a matter of law. *Id.*

Mr. Worley asserts that the Bank's allegations in the complaint do not support a declaratory judgment that the Bank has a superior claim to the declarant's rights under the Declaration. To evaluate that assertion, we must distinguish the declarant's rights from other components of the Declaration. The Declaration established covenants and restrictions for the Rarity Club and created a property owners' association and a governing authority to enforce the restrictions. Once recorded, restrictive covenants become "property interests that run with the land," binding on all subsequent purchasers. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 475 (Tenn. 2012). By virtue of the deed of trust it signed in favor of the Bank, Nickajack lacked the authority to encumber the real property without the Bank's consent. *See Helmboldt v. Jugan*, No. E2015-01664-COA-R3-CV, 2016 WL 4036417, at *3 (Tenn. Ct. App. July 25, 2016). The Bank consented to the terms of the Declaration in the Mortgagee Consent, but it also subordinated the lien of its deed of trust to allow the Declaration to survive a foreclosure.

In addition to restrictive covenants, the Declaration reserved for Nickajack, as the declarant, the right to govern and control the residential community during the development period. Unlike restrictive covenants, declarant's rights are not property interests; they are considered personal property. *See Hughes*, 387 S.W.3d at 467; *Civis Bank v. Willows at Twin Cove Marina Condo. & Home Owners Ass'n, Inc.*, No. E2016-00140-COA-R3-CV, 2016 WL 7468202, at *6 (Tenn. Ct. App. Dec. 28, 2016). Security interests in personal property are governed by Article 9 of the Uniform Commercial Code. Tenn. Code Ann. § 47-9-109(a)(1) (2013).

Our review of the pleadings reveals that the Bank claims entitlement to the declarant's rights by virtue of Nickajack's grant of a security interest in all contracts and general intangibles associated with the Rarity Club, including after-acquired contracts and general intangibles. The Bank further alleged that it filed a financing statement to

5

perfect its security interest. And upon default, the Bank exercised its right to foreclose and dispose of its collateral. The Bank purchased the collateral at a public disposition on August 19, 2009, which was reflected in a quitclaim bill of sale exhibited to the complaint. In the quitclaim bill of sale, all of Nickajack's interest in contracts and general intangibles associated with the Rarity Club were transferred to the Bank.

Mr. Worley argues that the Bank forfeited its superior claim by subordinating its lien in the Mortgagee Consent. In the Mortgagee Consent, the Bank "subordinate[d] the lien of the Deed of Trust and the lien of related collateral documents executed and/or filed in connection with the Deed of Trust to the lien of the Declaration." In other words, the Mortgagee Consent "is a contractual modification of lien priorities." *First Am. Nat'l Bank, Jackson v. Cent. State Bank*, No. 3, 1990 WL 26721, at *1 (Tenn. Ct. App. Mar. 15, 1990). Such agreements are enforceable under Article 9. *See* Tenn. Code Ann. § 47-9-339 (2013); *see also In re AM Int'l, Inc.*, 46 B.R. 566, 571 (Bankr. M.D. Tenn. 1985).

According to Mr. Worley, "by virtue of the Mortgagee Consent which is, for all intents and purposes, a subordination agreement, the [Bank's] lien rights were subordinate, that is, inferior, to the rights of the original Declarant, the Borrower, and inferior to Worley's rights as the current Declarant." So while Mr. Worley concedes that the Bank may have had a security interest in the Declaration, Mr. Worley maintains that the security interest was "subject to the Borrower's Declarant rights" even after the Bank disposed of the collateral. But Mr. Worley's argument ignores the effect of the disposition, which "[t]ransfers . . . all of the debtor's rights in the collateral."[3] Tenn. Code Ann. § 47-9-617(a)(1) (2013). The Bank alleged that it purchased the collateral at the public disposition, which it was entitled to do. *See id.* § 47-9-610(c)(1) (2013).

We conclude that the trial court did not err in denying the motion for judgment on the pleadings. Mr. Worley was not clearly entitled to judgment. *See McClenahan*, 806 S.W.2d at 769. The Bank alleged sufficient facts, if proven, to justify the requested relief.

B.

Mr. Worley next argues that the trial court erred in granting partial summary judgment to the Bank. Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[3] Mr. Worley's reliance on *Helmboldt v. Jugan*, No. E2015-01664-COA-R3-CV, 2016 WL 4036417 (Tenn. Ct. App. July 25, 2016), is misplaced. In *Helmboldt*, we held that a declaration of covenants and restrictions was extinguished when the senior mortgage holder foreclosed on the property because the mortgage holder was unaware of the declaration and never released the property or agreed to subordinate its interest. 2016 WL 4036417, at *5. In the present case, the Declaration, including the declarant's rights, survived the foreclosure on the real property. But it does not follow that the declarant's rights remained Nickajack's rights.

6

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party has the initial "burden of persuading the court that no genuine and material factual issues exist and that it is . . . entitled to a judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If, as is the case here, "the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).

If the moving party satisfies its burden, then the nonmoving party must demonstrate that there is a genuine, material fact dispute or the motion for summary judgment will be granted. *Id.* Satisfying this burden requires something more than the allegations or denials of pleadings. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015). The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06). We accept the evidence offered by the nonmoving party as true. *Byrd*, 847 S.W.2d at 215.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Rye*, 477 S.W.3d at 250; *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763.

The Bank substantiated its ownership claim with relevant documentation and the affidavit of Roger Denny, a bank officer. Mr. Denny authenticated the documents granting the Bank a lien on the real property and a security interest in the personal property associated with the Rarity Club, including Nickajack's general intangibles. *See* Tenn. Code Ann. § 47-9-203 (2013). He also established that the Bank filed a financing statement describing the collateral in the Register's Office for Marion County and the Tennessee Secretary of State's Office. *See id.* § 47-9-310 (2013). Nickajack defaulted on its payment obligations under the note. As a result, the Bank foreclosed on the real property and sold the personal property at a public sale. *See id.* § 47-9-604(a)(1) (2013). On August 19, 2009, the substitute trustee conducted a combined sale of all collateral at which the Bank purchased all the collateral. *See id.* § 47-9-610. Mr. Denny also authenticated the substitute trustee's deed and the quitclaim bill of sale conveying title to the collateral to the Bank.

We conclude that there is no genuine issue of material fact as to the ownership of the declarant's rights and that the Bank is entitled to declaratory judgment as a matter of

law.  For purposes of summary judgment, it was undisputed that the Bank held a perfected security interest in all personal property of Nickajack and that the Bank conducted a public sale of the personalty at which it was the high bidder.  The only dispute is over the legal effect of the Mortgagee Consent.

As explained above, the Mortgagee Consent authorized the recording of the Declaration and subordinated the lien of the Bank's deed of trust to "the lien of the Declaration."  The subordination language permitted the Declaration to survive the foreclosure conducted by the Bank, but it did not carve-out the declarant's rights from the scope of the Bank's security interest.  And the Mortgagee Consent did not preclude the Bank from disposing of the declarant's rights by a public sale.  As a transferee for value at the public sale, the Bank became the owner of all of Nickajack's rights to the collateral, including the Declaration and the declarant's rights.  *See id.* § 47-9-617(a)(1).  So when it was placed into receivership, Nickajack had no remaining interest in the Declaration.  The subsequent assignment to Mr. Worley was ineffective.

### III.

The trial court did not err in denying Mr. Worley's motion for judgment on the pleadings.  Mr. Worley was not entitled to judgment.  We also conclude that there are no genuine issues of material fact and that the Bank is entitled to a declaratory judgment as a matter of law that it owned the declarant's rights.  So we affirm the trial court's decision and remand the case for further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

8